JOHN M. BRADLEY *v.* CLARENCE B. KELLEY & TRUSTEE.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

*Porter, Witters & Longmoore* for the plaintiff.

*Pierce & Miles* for the defendant.

THOMPSON, J. This is an action of contract. The plaintiff sets forth in his specification, which was filed with the writ, that "he will seek upon trial to recover of the defendant only upon a certain note payable to the order of the plaintiff, dated at Newport, Vermont, December 9, 1925, for the sum of One Thousand Dollars, for value received, payable on demand, with interest, and signed by the defendant, Clarence B. Kelley." The note was secured by a chattel mortgage executed by the defendant at the time the note was executed.

The defendant filed an affidavit of defense in which he alleged under oath that the note was never delivered to the plaintiff; "that no obligation is owing by the defendant to the plaintiff by reason of such note"; and "that no consideration was paid by the plaintiff to the defendant at the time the alleged note" was executed. He filed an answer later in which he pleaded the general issue and payment. The only defense relied upon at the trial below was that of payment. There was a trial by jury, and a verdict and judgment for the defendant. The plaintiff excepted.

The plaintiff is the principal stockholder and chief executive officer of Bradley Auto Sales, Inc., a corporation engaged principally in selling motor vehicles and operating a garage in the city of Newport. He lived in an apartment in the garage building. His evidence tended to show that the note and mortgage were drawn and executed in his office in the garage building on December 9, 1925, and that the consideration for the same was $1,000 in cash paid by him to the defendant at that time, and that the note had not been paid. He did not produce the note at the trial. His evidence tended to show that the note was destroyed by fire on December 6, 1931, when the garage building was burned.

On October 24, 1925, five notes for $100 each, signed by the defendant and indorsed by Bradley Auto Sales and Noble & Sons, "running from one to five months consecutively," were given to the National Bank of Newport. The notes were paid when due, the last note being paid on April 2, 1926.

On December 7, 1925, the Orleans Trust Company took a note dated December 4, 1925, for $500, signed by the defendant and indorsed by Bradley Auto Sales, in a deposit made by the latter, the proceeds of which note were credited to the account

of the Bradley Auto Sales. The defendant claimed below that these note transactions were personal transactions with the plaintiff; but the evidence is to the contrary. The consideration for the note taken by the Orleans Trust Company was $500 paid to the defendant by the Bradley Auto Sales by its check of December 5, 1925. The note was paid in full on March 23, 1926. All of the notes were paid by orders given by the defendant on Noble & Sons, who were milk dealers and who had the milk from the defendant's farm. The plaintiff claimed that these two note transactions were with the corporation and not with him personally; that the only personal transaction he had with the defendant was the note sued upon and the mortgage securing it.

The defendant claimed that the note for $1,000 and the mortgage securing it were given to the plaintiff to secure him for indorsing the notes taken by the two banks. He testified that he had the note and mortgage drawn by Mr. Cleary, a lawyer of the city of Newport, on December 9, 1925, and on the same day he took them to the plaintiff's place of business, where he executed and delivered them to the plaintiff; that long after the notes taken by the banks had been paid the plaintiff handed him the note for $1,000, saying: "I don't know as I need this any more." The defendant produced at the trial below a typewritten instrument, Defendant's Exhibit C, which reads as follows:

"Newport, Vermont, December 9th, 1925
"For Value Received I promise to pay John M. Bradley, or order, the sum of One Thousand Dollars ($1000.00). Payable on demand, with interest.
(Signed) C. B. Kelley."

He testified that this instrument was the note for $1,000, which he gave to the plaintiff on December 9, 1925, and which the plaintiff surrendered to him.

The plaintiff denied that this instrument was the note which the defendant executed and delivered to him on December 9, 1925.

The plaintiff has briefed three exceptions taken to the admission of evidence.

■ The defendant was the first witness called by the plaintiff, and it was proved by him that he executed and delivered the note for $1,000 and the chattel mortgage securing it. He was also questioned as to whether the note had been paid, and about his allegations in the affidavit of defense that the note was never delivered to the plaintiff and that there was no consideration for it. On examination by his own counsel, the defendant testified that before he gave the note for $500 that was taken by the Orleans Trust Company, he got $500 from the National Bank of Newport. He was then asked: ''And was that on a note that was signed by Mr. Bradley?'' The plaintiff objected to the question on the ground: ''If they have any such note we think they should produce it, because we question it very much. He had business we claim prior to the execution of this mortgage· not with Mr. Bradley but with the corporation, the automobile corporation, and this is the only note we think that was ever made directly to Mr. Bradley, this thousand dollar note.'' The objection was overruled, and the witness answered, subject to exception: ''I think it was.''

It was error to receive the parol testimony over this objection of the plaintiff until the defendant had shown that he was unable to produce the note. But the error was harmless. It appears from uncontradicted evidence introduced later by the defendant that he did not give a note for $500 to the National Bank of Newport, but did give five notes, each for $100, which were indorsed by Bradley Auto Sales, Inc. and Noble & Sons. There is no evidence that the plaintiff personally signed or indorsed those notes.

■■ It appears from the testimony of the plaintiff on cross-examination that in 1930 he had trouble with the defendant which resulted in a personal conflict, and that a suit was pending in county court as a result of that conflict. Subject to the objection and exception of the plaintiff, the defendant was permitted to examine the witness as to the details of that conflict. Such details are not ordinarily admissible in evidence, and it would have been better if the court had excluded such evidence; but the scope of cross-examination rests largely in the discretion of the trial court, and we are unable to say that there was an abuse of such discretion in this case.

■ ■ The plaintiff testified on cross-examination that he understood before this suit was brought that the defendant had disposed of most of the mortgaged property, and that he knew that an action of trover was an effective action in such cases; that he did not bring an action of trover against the defendant because he did not want to do that. He was then asked: ''And you didn't want to do that after you had a fight with him either, did you?'' The question was objected to on the ground: ''We have a perfect right to maintain this suit or to bring this suit. It isn't for them to find fault because we didn't bring a more drastic action against him.'' The objection was overruled, and the witness answered, subject to exception: ''No, nor now either.'' We agree with the plaintiff that it was immaterial that he may have had two causes of action against the defendant; and it is the general rule that when a party has two legal causes of action involving the same subject-matter, the reason why he brought one action rather than the other is not a matter of judicial inquiry. But it does not appear that the question and answer were prejudicial, or that the trial court abused its discretion in permitting them.

## On Petition for New Trial.

The plaintiff has brought a petition for a new trial based upon the ground of newly discovered evidence. The newly discovered evidence is set forth in the affidavits of the plaintiff, David E. Porter, Esq., his attorney, Miss Elenore Cooley, and Wilbur F. Turner. It concerns the instrument Defendant's Exhibit C, hereafter called Exhibit C, hereinbefore set forth, which the defendant testified was the note for $1,000 which he caused to be made in Mr. Cleary's office on December 9, 1925, and which he signed and delivered, with the mortgage securing it, to the plaintiff on that day to secure the latter for signing his notes held by the two banks, and which he testified was delivered to him by the plaintiff long after the notes were paid.

The newly discovered evidence on which the plaintiff relies is in the form of *ex parte* affidavits which, by the agreement of counsel, are to be treated as testimony taken by way of depositions. We call attention to this matter that there may be no misunderstanding as to the proper procedure in taking testimony in support of, and against, petitions for new trials under

Supreme Court rule 4, as recently stated in *Johnson* v. *Rule,* 105 Vt. 249, 164 Atl. 681.

It appears from the record that Miss Elenore Cooley, who has worked as stenographer for Mr. Cleary for at least ten years, was the only stenographer working for him on December 9, 1925; that at that time he had only one typewriter, an L. C. Smith, and he has had only one typewriter at any time since then.

The mortgage securing the note for $1,000 is on a printed form with certain parts typewritten. Miss Cooley, who was a witness for the plaintiff, testified at the trial below that she was "very certain" that she typed the typewritten parts of the mortgage on the L. C. Smith typewriter then owned by Mr. Cleary; that Exhibit C was not typed by her, and it was not written on the typewriter then owned by Mr. Cleary; that the mortgage was made when the typewriter had a new ribbon, which was put on between the third and seventh of December, 1925; that the note was written on a different machine with a faded ribbon.

She testified on cross-examination that the type in the typewriter used in Mr. Cleary's office at the time of the trial was similar to the type in the typewriter on which the mortgage was written; that at the time the mortgage was made there were no other L. C. Smith typewriters in the court house, where Mr. Cleary has his office, except possibly, the typewriter of the county clerk, and that had smaller type than the Cleary typewriter.

A comparison of the typewriting in Exhibit C with that in the mortgage shows beyond any doubt that the two instruments were not written on the same machine. This appears from the numerals in the date "December 9, 1925" in both instruments. The typewritten letters and numerals have the same base line in the mortgage. None of the numerals extend below the base line of the letters. In Exhibit C, the bottom of the numerals "9" and "5" extends below the base line of the letters. In the mortgage, the bottom of the numeral "2" has two curves in it. In Exhibit C, the bottom of that numeral is a straight line.

Miss Cooley deposes in her affidavit, in substance, that the typewriter now owned by Mr. Cleary, hereafter called the new typewriter, was purchased new by him in February, 1927, and

was sent to him from Albany, N. Y.; that the typewriter on which she wrote the mortgage was exchanged toward the new one; that while she has been with Mr. Cleary he has never had more than one typewriter at any time; that in January, 1933, she wrote on the new typewriter the blank note (copy of Exhibit C), which is marked Ex. 1, W.F.T., attached to the affidavit of Wilbur F. Turner, and to which affidavit her affidavit is attached.

She deposes further that in her testimony given at the trial below: "I evidently did not make myself clear with respect to my understanding as to the type on the two machines, for I did understand at that time that the numerals on the older of said typewriters were different than those on the later typewriter and upon which I am now writing this affidavit."

It appears from the affidavit of O. E. Gathmann, taken by the defendant, that he is the engineer in charge of the factory service of the L. C. Smith division of the L. C. Smith & Corona Typewriting Company; that the peculiar numerals on the new typewriter are commonly referred to as "long tail or billing numerals"; that such numerals have been used on L. C. Smith typewriters since 1904, but they were used on the so-called correspondence models with ten-inch carriages only when specially ordered; that since 1925, billing numerals have been standard equipment on all L. C. Smith typewriters having carriages over ten inches wide; that the new typewriter, No. 704083-12, has a carriage twelve inches wide and it would be equipped with billing numerals unless specially ordered otherwise; that it was shipped from the factory to the Albany branch on February 17, 1927.

Wilbur F. Turner of Reading, Mass., has for twenty-six years maintained an office in the city of Boston, and during that time has been engaged as an expert examiner and photographer of questioned handwritings, ink analyses, erasures, alterations, interlineations, anonymous letters, age of documents, and forgeries. He has given expert testimony in 5,000 cases in different federal and state courts, and has been employed as an expert by banking institutions and leading law firms in Boston. He has frequently been called upon to make photographic comparisons of typewriting, and in so doing he looks for imperfections in the type, the alignment, style, size, and spacing.

He deposes that on January 27, 1933, he made an examination of Exhibit C, and compared it with Ex. 1, W.F.T. It is sufficient to say, without going into details, as he does in his comparison of the two instruments, that he found certain identification marks, *i.e.,* type tipped and out of alignment on certain capital and small letters; and ''I found that these same characteristics and identifications are identical in both the above referred to exhibits.''

He also deposes: ''The questioned note (Exhibit C) was typewritten on an old folded sheet of paper and over an erasure of typewriting. There has also been an erasure under the signature.'' * * * * ''In my unqualified opinion the note in question is a manufactured product and was written on the same typewriter as was the paper marked by me, Ex. 1, W.F.T.''

He deposes further: ''I also made a microscopic examination on the questioned note (Exhibit C), magnifying the signature to forty diameters for this purpose. This examination discloses that the signature was written with a blue ink classified by ink manufacturers as an iron ink; that so-called iron inks oxidize with the lapse of time, when exposed to air. That one of the results of such oxidization is that the ink gradually turns black. The limited amount of oxidization that has taken place in the signature on Exhibit C is inconsistent with the date thereof. That in my unqualified opinion the signature on Exhibit C was written not more than eighteen months prior to the date hereof.'' His affidavit is dated January 30, 1933.

The defendant, in opposing the petition, argues ingeniously that Exhibit C had nothing to do with the verdict, that the same result must have been reached by the jury if that exhibit had not been introduced into the case. We cannot agree with the argument. The production of Exhibit C at the trial by the defendant, supported by his testimony as to when and where it was made and the circumstances under which it was surrendered to him by the plaintiff, with the plaintiff's inability to produce the note sued upon, raised a strong presumption that the note had been paid and that the consideration for it was as the defendant claimed. We are of the opinion, after an examination of the record, that Exhibit C is the corner stone of the defense, and that it is doubtful if the verdict would have been for the defendant if it had not been produced.

The defendant says that the testimony of Mr. Turner impeaches the testimony of Miss Cooley at the trial below "that Exhibit C was not made on Mr. Cleary's typewriter," and the testimony of Mr. Mason, called by the plaintiff as an expert on handwriting, "that in his opinion Exhibit C and the mortgage were signed on the same day." The defendant misconstrues the testimony of these witnesses. Miss Cooley testified that Exhibit C was not made on the typewriter owned by Mr. Cleary on December 9, 1925.° She did not testify that it was not made on the new typewriter. Mr. Mason testified that the signature "Clarence B. Kelley" on the mortgage and the signature "C. B. Kelley" on Exhibit C "apparently were not made with the same pen." He replied, in response to the question if they were made at the same time: "That might be possible. The ink isn't faded enough so but what they might have been made the same day." * * * * "Why they may have been made on the same day, and they may not have been. It doesn't look as though they were written on the same table with the arm at the same angle with the pen." We agree with what defendant's attorney said at the trial, that the substance of this testimony is that the witness "couldn't tell" whether the two signatures were made on the same occasion.

It is contended that the newly discovered evidence of Miss Cooley and Mr. Turner is cumulative, and that the plaintiff was negligent in not discovering the same.

The testimony of these witnesses as deposed in their affidavits, except as to one or two facts not in controversy in Miss Cooley's affidavit, is not additional evidence of the same kind to the same point as was received in the trial below, but is evidence of new and independent facts, and therefore not cumulative. *Bradish* v. *State*, 35 Vt. 452, 456; *Gilman* v. *Nichols*, 42 Vt. 313; *Clark* v. *Gallagher*, 74 Vt. 331, 341, 52 Atl. 539; *Hannah* v. *Hannah*, 94 Vt. 493, 496, 112 Atl. 201.

The defendant, in support of his contention that the plaintiff failed to exercise due diligence in discovering the new evidence, says that the petition should be denied because the plaintiff learned early in the trial from the defendant, who was the first witness called by the plaintiff, that he had the questioned note; that if the plaintiff was surprised, he was surprised then, and should have applied to the court for a continuance

so that he might have had time and opportunity to prepare for that issue; that since the plaintiff chose to go along without requesting a continuance he is bound by his election, and it is too late now to ask for a new trial. In support of this contention, the plaintiff cites *Briggs* v. *Gleason,* 27 Vt. 114; *State* v. *White,* 70 Vt. 225, 39 Atl. 1085; *Coolidge* v. *Taylor,* 79 Vt. 528, 65 Atl. 582; *Taylor* v. *St. Clair,* 79 Vt. 536, 65 Atl. 655; and *Hemmenway* v. *Lincoln,* 82 Vt. 465, 73 Atl. 1073.

The defendant, in making this contention, overlooks the fact that on the question of due diligence in discovering new evidence there is a distinction between petitions for new trials brought on the ground of surprise and those brought on the ground of newly discovered evidence. It appears from the cases cited that the rule invoked by the defendant applies to petitions based upon the ground of surprise and not to those based upon the ground of newly discovered evidence. In *Briggs* v. *Gleason,* the leading case in this jurisdiction, there was a petition for a new trial on the ground of surprise and of newly discovered evidence. Judge Bennett, speaking for the Court, said:

> "If a party is surprised on trial, it is much more proper for him to make it a ground for an application for a continuance of the case, in the sound discretion of the court, than to lay by, and if cast in the suit to seek to open the cause anew by petition for a new trial. And, indeed, I should apprehend, it must be a strong case which would induce the court to grant a new trial, where the party neglected, at a proper time to move for a continuance.
>
> "To induce the court to grant a new trial for newly discovered evidence, they should feel assured that injustice has been done, and that a new trial would lead to a different result."

In petitions for new trials on the ground of newly discovered evidence, it must affirmatively appear, to establish due diligence, that the petitioner and his counsel had no knowledge of the newly discovered evidence or of facts putting them upon inquiry before or at the trial. *Reynolds* v. *Hassam,* 80 Vt. 501, 68 Atl. 645; *Taft* v. *Taft,* 82 Vt. 64, 71 Atl. 831; *Hemmen-*

*way* v. *Lincoln, supra; Hannah* v. *Hannah, supra; Peltier* v. *Larose,* 99 Vt. 343, 349, 132 Atl. 45.

The defendant, when called as a witness by the plaintiff, testified that he had possession of the note for $1,000, which he executed and delivered to the plaintiff on December 9, 1925, but he was unable to produce it at that time, and he did not produce Exhibit C until after the plaintiff had rested and he was testifying in defense. The trial below lasted only two days. It fairly appears from the record that the plaintiff introduced such evidence as was available to meet the effect of the production of Exhibit C.

It appears from the affidavits of the plaintiff and his attorney that neither of them had knowledge of the existence of Exhibit C until it was produced in court; and it is not claimed by the defendant that either of them had knowledge of the existence of Exhibit C or of facts putting them upon inquiry prior to the trial. It also appears from their affidavits that after the trial below the plaintiff and his attorney each conducted a long search to find a typewriter that was in use in 1925 in Newport and its vicinity that had numerals like those on Exhibit C; that they were unable to find such a typewriter, but Mr. Porter did discover that Mr. Cleary purchased a new typewriter in 1927 that had such numerals.

We think it affirmatively appears that there was no lack of diligence on the part of the plaintiff in discovering the new evidence.

The defendant also contends that the petition should be denied because the only effect of the newly discovered evidence would be to impeach him generally, and he quotes the rule stated in 20 R. C. L. 294, that: "If from the nature of. the evidence that the moving party seeks to rely upon * * * * it is apparent no purpose can be served other than the impeachment of the testimony of an adversary, or a witness of the adverse party, a new trial should not be granted."

It is the general rule that a new trial will not be granted on the ground of newly discovered evidence when the only effect of such evidence is to impeach an adverse party or witness. *Campbell* v. *Hyde,* 1 D. Chip. 65, 70; *Lawson* v. *Crane,* 83 Vt. 115, 119, 74 Atl. 641. Such evidence may incidentally impeach, but any testimony offered by a party in explanation

or in contradiction of the testimony of his adversary generally possesses the flavor of impeachment. *Henderson* v. *Edwards,* 191 Iowa, 871, 183 N. W. 583, 16 A. L. R. 1090. If the newly discovered evidence reaches beyond the mere impeachment of a former witness to the merits of the controversy, as it does here, a new trial will not be denied because it incidentally impeaches such witness. *Bridgham* v. *Hinds,* 120 Me. 444, 115 Atl. 197, 21 A. L. R. 1024.

The defendant makes the point that Mr. Turner does not undertake to say that the kind of numerals that are on Exhibit C were not in use on December 9, 1925. It is not questioned that, as deposed by Mr. Gathmann, billing numerals were in use long before 1925.

A controlling principle in all cases of petitions for new trials is, "that every petition for a new trial brought conformably to law, must fail or prevail according to the strength of the appeal it makes to the judgment and conscience of the Court." *In re Ketchum,* 92 Vt. 280, 287, 102 Atl. 1032, 1035; *Walsh* v. *Cole,* 97 Vt. 459, 123 Atl. 850; *State* v. *Maguire,* 100 Vt. 476, 485, 138 Atl. 741.

The newly discovered evidence is of such a character and is so persuasive that we are satisfied that it is reasonably probable that it, with the evidence taken below, will produce a different result at another trial. Such evidence indicates strongly that there was an attempt to perpetrate a fraud upon the court below; that Exhibit C is not the original note upon which this suit was brought, but is a manufactured and spurious instrument, and we think that the due administration of justice requires that a new trial be granted.

*Exceptions overruled, petition sustained with costs, judgment and verdict set aside, new trial granted, and cause remanded.*