# CRELLIN v. THOMAS.

No. 7763.   Decided July 29, 1952.   (247 P. 2d 264.)

See 53 C. J. S., Libel and Slander, sec. 231. Statement charging woman with being a prostitute as actionable per se. 33 Am. Jur., Libel and Slander, sec. 38; 11 A. L. R. 669.

*J. Grant Iverson, Jack Fairclough,* Salt Lake City, for appellant.

*LaMar Duncan, E. LeRoy Shields,* Salt Lake City, for respondent.

CROCKETT, Justice.

This is an action to recover damages for two slanderous statements which defendant allegedly made to others concerning plaintiff: One in March or April of 1949, that "Mrs. Crellin was a whore"; the other in October of 1949, that "* * * Mrs. Crellin had worked in a house of prostitution". The former is clearly slanderous per se, and the second would also seemingly be associated as a charge of unchastity, and apparently was so meant and understood. The defense asserted is that of truth.

The case was tried twice. The first trial resulted in a judgment for the plaintiff which was set aside and a new trial granted on the ground of newly discovered evidence.

Upon retrial, the jury returned a verdict of no cause of action.

Plaintiff raises two questions on appeal:

First, that the court abused its discretion in setting aside the first judgment and granting a new trial, and

Second, that the court erred in instructing the jury.

As to the first point: A wide discretion is reposed in the trial court in granting or denying a new trial on the basis of newly discovered evidence. The primary concern of the court is that justice be done, and the granting of such a motion is only reviewable in this court on the question of abuse of discretion. *Greco* v. *Gentile,* 88 Utah 255, 53 P. 2d 1155. True, the exercise of judicial discretion in such instance must be based on a showing of substantial material evidence, from which it appears there is at least a reasonable likelihood that it would affect the result in a new trial. See *Bowers* v. *Gray,* 99 Utah 336, 106 P. 2d 765; *Saltas* v. *Affleck,* 99 Utah 381, 105 P. 2d 176; *Jensen* v. *Logan City,* 89 Utah 347, 57 P. 2d 708. The granting of a new trial should never be merely capricious and arbitrary, but should only be done when sound judicial discretion, in the interest of doing justice between the parties, so requires. See 66 C. J. S., New Trial § 201, p. 500 et seq.

Defendant's representation was that her prior information concerning the plaintiff was that she had lived at Las Vegas, Nevada, and that inquiry had been made for information about the plaintiff there, to no avail; further that she did not learn about her working in Ely in time so the matter could be investigated and used in the first trial. Under Rule 33, U. R. C. P., defendant might have gotten the information as to where she had lived by submitting interrogatories. Nevertheless the showing made was such that we cannot say that the trial court abused its discretion in granting a new trial.

As to the second point, the instruction complained of is as follows: ■

"The court charges you that truth is an absolute defense in an action of slander, such as this case. If, therefore, you find from a preponderance of the evidence that the plaintiff did at any time in her life work in a house of prostitution *in any capacity* then in that event your verdict must be in favor of the defendant and against the plaintiff, no cause of action." (Emphasis added.)

As applied to the issues herein, the first sentence of the instruction is a correct statement of the law. See Am. Law Institute, Restatement of Torts, Sec. 582. The balance of the instruction is erroneous for reasons hereinafter stated.

The evidence is conclusive, and in fact plaintiff admits, that in the early 1920's she worked for a short time as a "dance hall girl" or "percentage girl" in the "Green Lantern" and a place called "Rhiney's" in Ely, Nevada, both of which were in the "red light" district. The evidence is in conflict as to the character of these places.

Illustrative of the defendant's evidence as to the nature of these establishments and their method of operation is the testimony of one Harold E. Woods who had worked in the locality at the time in question and was famliar with the situation. Concerning Rhiney's Place, he testified as follows: Question:

"What was the general reputation for morality?"

Answer:

"It was a good place * * *."

Question:

"Do I understand you to say it was a good place for morality, a good reputation?"

Answer:

"It had a reputation for the place it was, as a good place. * * * It was known as a whorehouse—a good one."

He explained that at these places there was a dance floor, a bar, and adjoining them were little rooms lined in a row down the street known as "cribs", in which the "crib girls" plied their trade as prostitutes; that

"* * * We would go there into the dance hall. There was always a girl to come and ask you to buy her a drink and dance with you. While dancing there was generally a proposition to go to the crib * * * and a fellow most generally did because he was there for that business."

According to this witness, there seems to have been a degree of protocol, if not actual chivalry involved in the procedure: Question:

"Did you always go into the dance hall and take the girl out and down the street to the crib?"

Answer:

"Yes;"

and further, Question:

"And after completing your interview with her you took her back to the dance hall?"

Answer:

"Absolutely."

Contrary to this, plaintiff's evidence was that these places were not primarily houses of prostitution, although it was practiced adjacent to them, as shown by the testimony of W. L. Tuck. He had lived in Ely for 32 years and had operated dance halls in the red light district. His testimony was that under the method of operation, the "percentage girls" who worked in the dance halls were not supposed to be prostitutes; that they hired a "better class" of girls, the "best girls they could get," to do the dancing; that while working as "dance hall girls" they were not permitted to work as "crib girls"; that they would dance with the pat-

rons and encourage them to buy drinks which cost $1; that the girl would be served a drink of colored water; that she received 50c of the $1 as her pay from the dance hall operator; that the dance hall operator did not employ the crib girls; that the crib girls handled their own business and "they hadn't better catch the dance hall girls out in their territory."

There was considerable other evidence as to a definite distinction between the dance hall or "percentage girls" and the prostitutes. Plaintiff denied she was ever a prostitute but said her work was as one of the "percentage girls".

The evidence would have permitted a finding that the dance halls were also houses of prostitution, and hence that the plaintiff "had worked in a house of prostitution" but as a "percentage girl" and not as a prostitute. Under such a finding, the utterance "Mrs. Crellin was a whore" would be false.

Admittedly, when truth is pleaded in justification, it is not necessary to prove the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial, providing that the defamatory charge is true in substance. Retatement of Torts, Sec. 582, Comment (e); 53 C. J. S., Libel and Slander, § 137, p. 225. Nevertheless, the language of the utterance just referred to is of such a fixed and certain meaning, 45 Words and Phrases, 133, that it cannot be said that a dance hall girl who does not act as a prostitute comes within that language, even though the dance hall may have been a house of prostitution or that prostitution may have been practiced in connection with it.

The instruction hereinabove quoted made it mandatory upon the jury to find that the alleged utterance was true if the plaintiff worked *in any capacity* in a dance hall which was also a house of prostitution, which, of course, would include even as a percentage girl. In view of the conflict in the evidence as hereinabove set

out, this was obviously wrong. To so instruct was prejudicial error. The case accordingly is remanded for a new trial.

Costs to appellant.

WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice (concurring in the result).

I concur in the result reached in the main opinion on the ground that the instruction given was erroneous. I also agree with the reasoning of Chief Justice WOLFE'S dissent relative to the nature and extent of diligence necessary properly to justify a motion for new trial.

It respectfully is suggested that we might have omitted a recital of the facts in this case. In detailing them we republish and emphasize the libel complained of, place it on the printed page for all to see, and widen the arena for the battle of words. It is not necessary, in the opinion of the writer, that the linen of these litigants be laundered here, nor hung out to dry in a printed volume. In repeating the facts we may do an injustice to erstwhile good and honest people, their families and friends, and open new wounds before others, less painful, have had time to heal. The facts of this case are of little importance to the people of the world, but recording them here well may bring heartache to some,—a result we easily could avoid by generous and sympathetic non-disclosure.

WOLFE, Chief Justice (dissenting).

I dissent. In my opinion the trial court abused its discretion in granting the defendant a new trial. I think that she did not as a mattter of law exercise reasonable diligence before the first trial to discover and produce the new evidence which was discovered subsequent to the first trial and upon which she relied in her motion for a new trial. I readily concede that trial courts have wide discretion in

granting and refusing to grant new trials, but their discretion is not without bounds. For the reasons which I will hereafter point out, it is clear that the court below went beyond those limits.

As to the efforts of the defendant prior to the first trial to uncover information regarding the former activities of the plaintiff, the following testimony was adduced:

The defendant testified that she had been informed by a friend of hers that the plaintiff had "come from a house of prostitution", but her informant did not know where the house of prostitution was located; that the defendant knew the plaintiff had lived in Tooele, Utah, her present residence, for about ten to fifteen years, and that the house of prostitution referred to was not in Tooele; that the plaintiff on one occasion had told her that she had once lived near Las Vegas, Nevada, and that she had met her husband there and that she was in that city in the spring of 1926; that both the defendant and her husband had made numerous inquiries in and around Tooele to ascertain information as to the plaintiff's former residences and her former activities, but there efforts proved fruitless.

The defendant's husband testified that the plaintiff had remarked in his presence about three or four years ago that she had once lived and was married in Las Vegas; that after the plaintiff commenced her action against the defendant, he wrote the police department in Las Vegas to ascertain whether there was any record there of the plaintiff, but he did not receive a reply; that he thereafter telephoned the Las Vegas police department requesting that they search their records for any reference to the plaintiff, but they again failed to respond to his request; and that it was not until the evening after the first trial that a neighbor of the plaintiff, who he had previously talked to about the plaintiff, volunteered information which furnished the lead to discovering evidence of the plaintiff's employment in Ely, Nevada, as a dance hall girl and upon which evidence the defendant relied in her motion for a new trial.

Counsel for the defendant testified that after the plaintiff commenced her suit, he had only indefinite rumors as to the plaintiff's former activities; that he requested his client to make investigations as to the rumors; that he was unable to obtain any concrete information except that the plaintiff had formerly lived somewhere in the state of Nevada; that he did not believe the alleged slanderous statement to be true; that because of his lack of evidence, his main defense at the first trial was that the plaintiff had not been seriously damaged by the statement; that he did not take the deposition of the plaintiff or serve interrogatories upon her in an effort to determine her former places of residences or activities in Nevada.

Rule 59 (a) (4), U. R. C. P., empowering trial courts to grant new trials upon the ground of newly discovered evidence, restricts that power to cases where the newly discovered evidence

"could not, with reasonable diligence, have [been] discovered and produced at the trial."

Courts have no right to grant new trials on the ground of newly discovered evidence without "reasonable diligence" being proved. It cannot be presumed nor should that requirement be treated lightly. As to what constitutes "reasonable diligence" no definite answer can, of course, be given. The efforts which a party must make before he has exercised "reasonable diligence" vary with the individual cases. It has been said that

"by reasonable diligence is meant appropriate action, where there is some reason to awaken inquiry and direct diligence in a channel in which it would be successful." *Levi* v. *Oklahoma City*, 198 Okl. 414, 179 P. 2d 465, 466.

Here, the defendant in defending a slander suit was interested in proving the truth of the alleged slanderous declaration. This, of course, necessitated exploring into the plaintiff's past activities. She knew that she had at one

time lived in or near Las Vegas, but her efforts to secure information about her when she resided there were unproductive. It was not until after the first trial that a neighbor of the plaintiff with whom her husband had talked prior to the first trial, volunteered information which furnished the clue that the plaintiff had worked as a dance hall girl in Ely, Nevada. The defendant, of course, had no control over the timing of this disclosure. But there was at all times prior to the first trial one person who knew where the plaintiff had resided during her lifetime. This person was the plaintiff. The defendant could have, with no cost to herself, submitted to the plaintiff interrogatories to be answered by her concerning her past places of residence and employment, pursuant to Rule 33, U. R. C. P. Following up the answers to such interrogatories would have put the defendant on the same track which led her to make inquiries in Ely after the first trial. The defendant would have by using this simple method of discovery supplied herself with information which she stumbled onto months later. Until a party has utilized such convenient and logically suggestive means of discovery, I think that in law he has not exercised the "reasonable diligence" required by Rule 59 (a) (4). One seeking a new trial on the ground of newly discovered evidence must show that he and his counsel had no knowledge of evidence or facts which would have put them on inquiry before the trial. *Bradley* v. *Kelley,* 105 Vt. 478, 168 A. 554.

This is not the case where the details of an accident, incident or event become material in a case and the parties do not know who, if anyone, witnessed the accident, incident or event. In such cases only the notoriety of a trial may bring forth the unknown witnesses. In the instant case, no such situation existed. The defendant knew at all times that there was one person who could inform her as to the plaintiff's former places of residence and employment. Yet she did not avail herself of that information. If "reasonable diligence" means anything at all it includes exhausting

logical and easily accessible avenues of investigation. This the defendant failed to do.

Public interest requires that there be an end to litigation and a new trial is not warranted for the purpose of enabling a party to produce further evidence unless he has shown some legally justifiable excuse for not having produced such evidence at the first trial. *Shivers* v. *Palmer*, 59 Cal. App. 2d 572, 139 P. 2d 952. Perhaps before the adoption of the new Utah Rules of Civil Procedure there were no means whereby a party could with slight effort and little cost on his part ascertain facts within the knowledge of the other party. But now with the broad discovery provisions of the New Rules available to litigants, particularly the right to submit interrogatories to the opposing party under Rule 33, "reasonable diligence" to discover evidence will often require utilization of the New Rules on discovery. The greater the means at hand for discovering evidence, the greater the effort which must be exercised by parties to constitute "reasonable diligence". With the case load in this court and in the trial courts of this state constantly increasing, parties should not be allowed to consume the time of the courts in re-trying cases because they have discovered new evidence, unless they can present a meritorious excuse to the court for their failure to unearth the evidence beforehand. In this respect, the defendant utterly failed. The record is devoid of any reason whatever for her failure to prepare at her convenience interrogatories as to the plaintiff's former residences and submit them for answering. She clearly has not met the burden cast upon her by Rule 59(a)(4) to show "reasonable diligence".

The digests are replete with cases holding that the discovery after trial of matters of public record is not a ground for a new trial unless on diligent search and inquiry in the proper office, such record was not discovered. See *Drespel* v. *Drespel*, 56 Nev. 368, 45 P. 2d 792, 54 P. 2d 226, and *In re Hammer's Estate*, 145 Wash. 322, 260 P. 532. The effort required of the defendant here to prepare and

submit interrogatories to the plaintiff is certainly no greater than is required to examine public records. Courts have held generally that new trials should not be granted where the moving party has failed to interview witnesses known to have or likely to have pertinent information. 39 Am. Jur. 169. Little or no greater effort would have been required of the defendant to submit interrogatories to the plaintiff than to interview a witness known to have desired facts in his knowledge.

I would reverse the judgment of the lower court entered on the verdict after the second trial. This would have the effect of reinstating the first verdict and judgment.