PETRA RAFAELA GONZÁLEZ, demandante y recurrida, *v.* ARCADIO RAMÍREZ CUERDA, demandado y recurrente.

Número: 589    Resuelto: 23 de abril de 1963

*Mario Báez García,* abogado del recurrente; *E. Ramírez Vincenty,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El extenso récord de este caso revela en forma trágica y

al rojo vivo la forma y manera en que ciertos seres se tuercen y se enredan en sus vaivenes por los difíciles senderos de la vida, al extremo de poner a dura prueba el arraigado sentido de la decencia y el respeto a la dignidad humana que caracteriza nuestra sociedad.

No obstante el cúmulo de testimonios contradictorios que aparecen del récord de este caso, no se nos ha señalado razón alguna que justifique alterar o en otra forma modificar las determinaciones de hechos del tribunal de instancia. Por el contrario, hemos examinado cuidadosamente dicho récord y encontramos que tales determinaciones están sostenidas por la prueba que desfiló ante el magistrado juzgador quien estaba en mejores condiciones que nosotros para dirimir el conflicto de la prueba que surgió durante la vista del caso, y juzgar la veracidad de los testigos que declararon ante él. Disponemos así del primer error apuntado por el recurrente Arcadio Ramírez Cuerda.

Tales determinaciones de hecho son las siguientes:

"1. Para fines del año 1958 compareció la demandante Petra Rafaela González a la oficina de la Fiscalía del Tribunal Superior de Mayagüez y presentó querella contra Arcadio Ramírez Cuerda, demandado en este caso. Ello dió lugar a que el Hon. Luis A. Limeres expidiera una citación fechada 7 de octubre de ese año ordenando la comparecencia del demandado a su oficina. (Exhibit 2, demandado.)

2. En presencia del querellado, el funcionario aludido hizo que la demandante repitiera supuestas manifestaciones dichas por el señor Ramírez Cuerda lesivas a la honradez profesional del señor Limeres.

3. El señor Limeres entonces solicitó al demandado una explicación de su conducta contestándole éste, citamos: 'Por qué le das crédito a una puta, a una mujer pervertida como la señora González, que tiene relacions sexuales con sus pupilos.' Con anterioridad a ese día, el Fiscal no conocía a la demandante, aunque el demandado le había solicitado ordenara a Petra Rafaela González le desalojara una casa de su propiedad.

4. Parecidas manifestaciones hizo el demandado a Rafael Quevedo refiriéndose a la demandante, en conversación habida entre ambos en diciembre de 1958.

5. Como antecedente a los hechos expuestos, la demandante y el demandado se conocieron para fines de 1957, y para junio de 1958 ella ocupó una casa propiedad de él por un canon mensual de $100.00 e instaló su negocio de pupilos y servicio de fiambreras.

6. La demandante y el demandado llevaron relaciones amorosas durante algún tiempo en el año 1958 y en ese tiempo el demandado le facilitó dinero y concedió firmas para préstamos en el banco a la demandante, extremos que reflejó prueba documental consistente en un diario, notas de colmados, avisos del banco y una carta dirigida al demandado por la demandante.

7. Para octubre de 1958 cesaron estas relaciones y la demandante trasladó su negocio a otra casa.

8. En ese mismo año la demandante y el estudiante Tony Vélez vivieron maritalmente, unión que culminó en el nacimiento de un hijo en diciembre de 1959.

9. Siendo señorita la demandante, había vivido en su juventud con el señor Lolo Vargas, que era un hombre casado aunque separado de su esposa.

10. Los hechos anteriormente relatados nos muestran a la demandante como que ha vivido con tres hombres en distintas épocas de su vida sin ser casada con ellos. Trabajadora, interesada en el bienestar y porvenir de su hina, [sic] fruto de sus amores con Antonio Vélez, de educación escasa y conducta reprochable, sin llega [sic] a los extremos contenidos en las manifestaciones calumniosas del demandado.

11. Considerando la primera parte del párrafo anterior, el Tribunal estima que los daños probados y ocasionados a la demandante deben reducirse a la suma de $1,000.00."

Contra la sentencia condenándole a pagar a la recurrida daños en la suma de $1,000, las costas, y $500 de honorarios de abogado, por la razón de que el recurrente calumnió a la recurrida al proferir las frases lesivas con respecto a su castidad que se señalan en las referidas determinaciones de hechos, y que tales frases constituyen una calumnia *per se*, pues se trata de la imputación de un delito, interpone el recurrente el presente recurso de revisión, y apunta que el

tribunal de instancia incurrió en error al aplicar la ley al presente caso, al resolver que la palabra "puta" imputa un delito y al no resolver una moción de desestimación basada en que no se alegó ni la imputación de un delito ni que la imputación ocasionase determinados daños. Por estar íntimamente relacionados entre sí, discutiremos estos errores conjuntamente.

En *Moraza* v. *Rexach,* 68 D.P.R. 468 (1948), dijimos que la imputación de "pillo" proferida en un arrebato de excitación y pasión no constituye calumnia *per se.* El récord no demuestra que las imputaciones que dan causa a la acción en este caso hayan sido proferidas en tal estado de ánimo. Además, al hacerse una de las imputaciones que motivan esta acción, se señalaron otros detalles por vía de explicación o fundamento de la misma.

La ley que establece la acción de daños y perjuicios ocasionados por libelo y calumnia, define esta última así:

"Se entiende por calumnia la publicación falsa o ilegal, que no sea un libelo, y que impute a una persona la comisión de un hecho constitutivo de delito, o tienda directamente a perjudicarle con relación a su oficina, profesión, comercio o negocios, o que, como consecuencia natural, le cause daños reales y efectivos." (32 L.P.R.A. sec. 3143.)

En el caso de calumnia como en el de libelo, la causa es justiciable *per se,* o sea, que no hay que alegar ni probar daños específicamente, cuando se imputa un hecho (1) constitutivo de delito o, (2) que tienda directamente a perjudicar a una persona en su oficina, profesión, comercio o negocio. Pero, contrario a lo que el estatuto dispone en cuanto a libelo, en el caso de calumnia el estatuto no hace referencia específica a las publicaciones que tienden a exponer a una persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social. Esto es, la definición estatutaria de calumnia no abarca ni se extiende expresamente a los casos de imputaciones calumniosas sobre

la honra de una mujer, en ausencia de alegación y prueba de daños específicos.

Como indica el recurrente, las frases proferidas por él no imputan hechos constitutivos de delito en Puerto Rico, pues ni el ser prostituta ni la fornicación constituyen delito en esta jurisdicción a menos que alguna parte sea casada en cuyo caso los hechos pueden constituir el delito de adulterio.

Para que la imputación tienda directamente a perjudicar a una persona en su comercio o negocio, se requiere generalmente que la misma se refiera a, o que esté relacionada con, la actividad comercial, o sea, que tenga el propósito y efecto de poner en tela de juicio el crédito y la honradez o integridad de la persona en las gestiones de su negocio. (Newell, *Slander & Libel*, secs. 150, 154.) Aunque podría tal vez sostenerse aquí que el epíteto sobre la honradez de la recurrida en su vida privada le afecta en su actividad comercial por estar relacionado con la naturaleza de su negocio de hospedaje y servicio de comidas a domicilio, preferimos sostener la causa de acción ejercida por los fundamentos que expondremos a continuación.

Bajo la ley común de donde proviene nuestro estatuto sobre libelo y calumnia, las frases calumniosas con respecto a la falta de castidad de una mujer no eran justiciables *per se*. La razón original de esta regla era que las mismas no constituían la imputación de un delito punible por los tribunales del estado (*temporal courts*) y, por el contrario, constituían una ofensa de la cual sólo podían tomar conocimiento las cortes eclesiásticas (*spiritual courts*). Esta regla se ha variado en distintas jurisdicciones bien por estatuto o por la interpretación judicial, por considerarse anacrónico su fundamento. *Crellin* v. *Thomas*, 247 P.2d 264 (Utah 1952); *Good* v. *Johnson*, 83 N.E.2d 367 (Ill. 1949); *Biggerstaff* v. *Zimmerman*, 114 P.2d 1098 (Colo. 1941); *Shultz* v. *Shultz*, 275 N.W. 562 (Iowa 1937); *Lukosevicia* v. *Barton*, 122 Atl.

709 (Conn. 1923); *Walmsley* v. *Kopczynski*, 195 N.Y.Supp. 699 (1922); *Mercy* v. *Talbot*, 189 Ill. App. 1 (1914).

En Puerto Rico, donde el concepto de la dignidad humana está tan hondamente arraigado, de lo cual damos ejemplo elocuente en la Carta de Derechos de nuestra Constitución, y donde consagramos, como parte entrañable de nuestro acervo de valores humanos, el mayor respeto a la mujer, autora de nuestros días, madre de nuestros hijos y piedra angular de nuestra familia, inexplicablemente no hemos legislado específicamente, como se ha hecho en tantas otras jurisdicciones, con el fin de hacer justiciable *per se* la imputación calumniosa relacionada con la castidad de la mujer.

■ Creemos, no obstante la situación del derecho estatutario previamente señalada, que en Puerto Rico la imputación falsa con respecto a la honra de la mujer es justiciable *per se*. A continuación relacionamos los fundamentos que, a nuestro juicio, sostienen este criterio.

Dentro de los términos de los Arts. 7 y 1802 del Código Civil vigente (31 L.P.R.A. secs. 7 y 5141), cabe la acción de daños y perjuicios por la publicación de hechos falsos con respecto a la honra de una mujer. Así se ha resuelto por el Tribunal Supremo de España refiriéndose a los equivalentes artículos del Código Civil español, Arts. 6 y 1902, en sentencia de 6 de diciembre de 1912 (125 *Jurisprudencia Civil*, pág. 582). En este caso se trataba de la publicación en un periódico de la noticia falsa que un fraile se había fugado de un convento llevándose a una señorita designada específicamente por su nombre, de quien había tenido escandalosa sucesión tres meses antes. El periódico luego publicó una retractación completa e indubitable. Resolvió dicho tribunal en ese caso:

"Considerando que la honra, el honor y la fama de la mujer constituyen los bienes sociales de su mayor estima, y su menoscabo la pérdida de mayor consideración que puede padecer en una sociedad civilizada, incapacitándola para ostentar en ella el

carácter de depositaria y custodia de los sagrados fines del hogar doméstico, base y piedra angular de la sociedad pública, debiendo, por lo tanto, ser apreciados estos daños como uno de los más graves, que obliga a tenerlos en cuenta al legislador para legislar y a los Tribunales encargados por la ley de aplicar y de realizar la justicia con el propósito de remediarlos para procurar se fije una norma reguladora, estableciendo una responsabilidad civil, armonizada con los principios jurídicos que informan nuestro derecho común, si no se quiere fomentar en la sociedad una negligencia suicida, cual sería el abandono de un elemento social de primer orden como la mujer, al capricho de la pública maledicencia:

Considerando que tomados en cuenta estos fundamentos sociales de toda legislación y de toda organización de justicia, no cabe desconocer que el hecho controvertido en autos constituye una total y absoluta expoliación de la dignidad personal, familiar y social de la joven ofendida, violentamente despojada de todos sus títulos de pudor y honestidad que la hacían acreedora a la estimación pública por presentarla de modo evidente y escandaloso culpable de fuga del hogar paterno y de amancebamiento sacrílego consumado, con todas sus consecuencias naturales, inhabilitando por efecto de la pública exposición del hecho calumnioso en periódicos de gran circulación, como *El Liberal,* que hacen la rectificación imposible, tanto por la imborrable impresión que causa en el ánimo de sus lectores, cuanto por que la reproducción de todo suelto injurioso hecha en la Prensa no altera, según reiterada jurisprudencia, la responsabilidad del que la reproduce, puesto que lo que castiga la ley es la propagación de la injuria; y por todo esto es por lo que el Tribunal sentenciador, al someter el daño moral causado a compensación pecuniaria, no confunde, como se supone, las atribuciones del Poder judicial con las del Poder legislativo, ... una indemnización pecuniaria, que si nunca es bastante como resarcimiento absoluto de ofensas tan graves, al fin es la que se aproxima más a la estimación de los daños morales directamente causados a la joven Mussó, y que llevan consigo, como consectario naturales y lógicos, otros daños, esto es, los materiales y los sociales, conforme al criterio tan sabiamente manifestado en la ley 21, tít. 9.° de la Partida 7.ª, cuando al disponer 'que cualquier que reciba tuerto, ó desonrra, que pueda demandar enmienda della en una destas dos maneras, qual más quisiere. La primera, que paga el que lo desonrre, enmienda de

pecho de dineros. La otra es en manera de acusación, pidiendo que el que le fizo el tuerto, que sea escarmentado por ello . . . E la una destas maneras se tuelle por la otra; por que de un yerro no deve ome recebir dos penas por ende. E desque que ouiere escojido la una, non la puede dexar, é pedir la otra . . .' ley cuya aplicación ha sido tradicional en España:"

La corte sostuvo la determinación de la cuantía de los daños no obstante no haberse presentado prueba de daños específicos, en estos términos:

". . . el valor de tales perjuicios no descansa siempre en la prueba que haya de practicarse en la litis, sino en el reconocimiento prudente prestado á la reclamación en los escritos fundamentales de la discusión, y no sólo por esto, sino porque siendo indudable que la honra y el decoro personal son cosas que están por encima del comercio humano y que sólo quien las pierde puede apreciar en todo su valor, á nadie más que al Tribunal sentenciador corresponde, dada la naturaleza del juicio, fijar su importe prudencial, atendiendo á las circunstancias de la ofendida, su edad y su posición social, apreciación ésta tampoco infringida en forma que, sobre la manera de indemnizar en dinero confirma la ley tradicional al decir que . . . 'deue estonce preguntar el judgador al querelloso, por guanto non querría auer recibido aquella desonrra; é des que la ouiere estimado, él deue mirar gual fue el fecho de la desonrra, é lugar en que fue fecha, é gual es aquel que la recibió, é el que la fizo. E catadas todas estas cosas, si entendiere que la estimó derechamente, deue mandar que jure; que, por tanto, guanto estimó la desonrra, que la non querría auer recibido, é des que la ouiere jurado, deuela judgar é mandar al otro que la peche la estimación. E si el judgador entendiere que la aprecó además deuela templar según su aluedrío . . .' "

■ No tan sólo procede la acción de daños y perjuicios por imputaciones falsas a la honra de una mujer sino que la valoración de los daños bajo tales circunstancias corresponde al juzgador conforme a las exigencias de equidad, por lo que no puede ser suficiente causa para la denegación de la indemnización su falta de determinación pecuniaria. Esta doctrina ha sido subsiguientemente reafirmada por dicho tribunal en

sus sentencias de 7 de noviembre de 1919 (148 *Jurisprudencia Civil*, 2da. serie, 36) ; 19 de mayo de 1934 (Aranzadi, *Repertorio de Jurisprudencia*, Tomo III, Núm. 903, pág. 449) ; 2 de febrero de 1940 (Aranzadi, *Repertorio de Jurisprudencia*, Tomo VII, Núm. 89, pág. 59) ; 24 de diciembre de 1941 (Aranzadi, *Repertorio de Jurisprudencia*, Tomo IX, Núm. 115, pág. 72) ; 2 de diciembre de 1946 (16 *Jurisprudencia Civil*, 2da. serie, 586) ; y 24 de mayo de 1947 (18 *Jurisprudencia Civil*, 2da. serie, 1196) ; Manresa, *Comentarios al Código Civil Español*, Tomo 12, pág. 652; Puig Brutau, *Fundamentos de Derecho Civil*, Tomo 2, Vol. II, pág. 675.

La definición estatutaria de calumnia adoptada en Puerto Rico no proveyó expresamente nada en cuanto a imputaciones falsas con respecto a la honra de la mujer. Por lo tanto entendemos que la misma no es incompatible con la antedicha doctrina, la que ha sido establecida bajo disposiciones estatutarias similares a las nuestras.

Además, en adición al antiguo estatuto que específicamente provee sobre la acción basada en la calumnia, que guarda silencio con respecto a la imputación calumniosa sobre la castidad de una mujer, la Constitución del Estado Libre Asociado de Puerto Rico, confiere a toda persona el derecho a protección de ley contra ataques abusivos a su honra. Art. II, sec. 8, Constitución de Puerto Rico (1 L.P.R.A., pág. 189). La imputación calumniosa de falta de castidad en una mujer es el ataque más abusivo que pueda hacerse a su honra. Sabido es que cuando en una constitución se establece una norma general no se necesita de legislación para implementarla. De manera que resulta obvio que la imputación en este caso es justiciable y que según hemos demostrado previamente, es justiciable *per se*.

La conclusión precedente encuentra apoyo adicional en determinaciones de tribunales de última instancia en jurisdicciones donde el derecho proviene de la ley común anglo-

sajona y en donde no se ha seguido la arcaica regla de dicho derecho que niega todo recurso en casos como éste.

En el caso de *Cooper* v. *Seaverns*, 105 Pac. 509 (Kan. 1909), se resolvió que era calumnioso *per se* el decir que "aquella niñita nació dentro de los cuatro o cinco meses después que se casaron; ahora, ¿qué piensa usted de ellos?." En este caso, que ha sido seguido subsiguientemente y que ha sentado la doctrina imperante en Kansas y en otras jurisdicciones (*Interstate* v. *Garnett*, 122 So. 373 (Miss. 1929)), la Corte Suprema de dicho estado hizo un análisis detallado de la jurisprudencia sobre la materia y, al resolver no seguir la doctrina de la ley común que declara que una imputación como ésa no es justiciable, dictaminó:

"La Legislatura no se ha expresado sobre la materia de la doctrina de la ley común bajo consideración. La Constitución, sin embargo, contiene las siguientes disposiciones: 'La libertad de prensa es inviolable; y toda persona podrá libremente hablar, escribir y publicar sus sentimientos con respecto a todos los asuntos, siendo responsable por el abuso de tal derecho. Toda persona por razón de los perjuicios que sufriere en su persona, reputación o propiedad, tendrá recurso mediante el debido proceso de ley y la justicia administrada sin dilación.' Carta de Derechos, secs. 11, 18 (Estatutos Generales 1901, secs. 93, 100.) Es cierto que documentos de esta naturaleza se interpretan de acuerdo al derecho común. Pero en un estado donde el respeto más profundo por la reputación de la mujer es natural en la gente, imputaciones de la índole bajo discusión no puede considerarse más que como abusos del derecho de libre expresión. Este es el hecho escueto, y como constituyen abusos, su publicación de palabra debe dar lugar a responsabilidad. La herida incurable a los sentimientos de la víctima, el desprecio y descrédito a que se le somete, su exclusión de la sociedad de las personas de límpida reputación, y otras consecuencias denigrantes como consecuencia de la calumnia son los perjuicios más deplorables que se sufren en la reputación. Esto es, otra vez, el hecho escueto y por tales perjuicios ella debe tener un remedio legal bajo el debido proceso de ley, que bajo nuestro procedimiento es por acción civil en la Corte de Distrito. Por lo tanto la regla de la ley común no está ni por

lo menos en simpatía con el verdadero espíritu y propósito de estas disposiciones de la Carta de Derechos . . ."

"Este no es el caso de un principio que goza de extensa aprobación, fundado en justa razón, meramente de dudosa sabiduría y que, por lo tanto, debe seguirse hasta que sea descartado por la Legislatura. Este es el caso de una proscrita regla de negación de derecho cuyo único propósito ha sido siempre frustrar la justicia natural en uno de los más preciados y tiernos de los intereses humanos. Por lo tanto, se justifica su repudio. El mundo es criticón y la reputación por modestia y castidad de una mujer o una joven es de inestimable valor. Su pérdida la reduce a una pobreza de veras. El perjuicio, de hecho, es el resultado inevitable de tal privación, pueda o no el perjudicado señalar algún daño específico en unos pocos dólares o en responsabilidad por una exigua multa, si la reclamación es cierta. Por lo tanto, el alegar daños específicos como base para obtener un remedio debe tratarse como una ficción inútil . . . Tomando en consideración el origen e historia de la regla, la razón en que se fundamenta, su carácter y consecuencias y el grado de su contradicción con nuestra Constitución y sistema de leyes, no es aplicable a las condiciones ni llena las necesidades de la gente de este estado y por consecuencia no es parte de la ley de este estado."

¡Qué menos podemos decir en esta comunidad donde prevalecen corazón adentro los mismos nobles sentimientos con respecto a la mujer; donde la Carta de Derechos de nuestra Constitución no tan sólo provee garantías similares a las citadas por el tribunal en el caso precedente sino que, más específicamente, dispone que *"Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada y familiar"*! (Énfasis nuestro.)

En vista de lo expuesto, resolvemos que, a la luz del estado de nuestro derecho y con el fin de dar vida y efectividad a las garantías de inestimables valores humanos consagrados en la Constitución de Puerto Rico, la imputación falsa de falta de castidad en una mujer, el atribuirle que es una prostituta cuando no lo es, constituye una declaración calumniosa *per se*

y por lo tanto en un caso como el que nos ocupa no se requiere ni la alegación ni la prueba de daños específicos. (¹)

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Santana Becerra y Pérez Pimentel concurren en el resultado.

El Juez Presidente Señor Negrón Fernández no intervino.

---

(¹) En 49 A.B.A.J. 149, No. 2, correspondiente a febrero de 1963, se publica una interesante monografía titulada *"Remolding of Common Law Defamation"* del profesor Albert E. Harum, en la que se sostiene que el libelo es justiciable sin prueba de que se han ocasionado daños específicos, no siendo éste el caso de la calumnia, la que sólo es justiciable en determinados casos. Tal era la antigua regla del *"common law"* con respecto a libelo; lo es hoy día en Inglaterra y en una minoría de jurisdicciones norteamericanas, y ha sido adoptada por el *"Restatement, Torts"*. Sin embargo, la misma no es seguida en la mayoría de las jurisdicciones norteamericanas ni en Puerto Rico, donde se exige la alegación y prueba de daños específicos cuando se trata de libelo *per quod. Bosch* v. *Editorial El Imparcial Inc.,* 87 D.P.R. 285 (1963).