## SALTAS v. AFFLECK et al.

No. 6190.   Decided September 5, 1940.   (105 P. 2d 176.)
Rehearing Denied, January 11, 1941

*Gerald Irvine* and *Ralph T. Stewart,* both of Salt Lake City, for appellant.

*H. G. Metos* and *Samuel Bernstein,* both of Salt Lake City, attorneys for respondent.

*Stewart, Stewart & Parkinson* and *E. B. Cannon,* all of Salt Lake City, attorneys for defendant.

MOFFAT, Chief Justice.

Spero Saltas, thirty year old son of plaintiff and unmarried, died as a result of an accident, occurring January 27, 1938, at the intersection of Third Avenue and K Street in Salt Lake City, Utah. Deceased's father seeks to recover damages from Kenneth Butte for the death of Spero Saltas, alleged to have resulted from the negligence of the defendant.

Deceased was a guest passenger in a Ford automobile driven north on K Street by Gerald A. Frantz at the time of the accident. Kenneth Butte, the defendant, was driving a truck, westerly on Third Avenue. The two conveyances collided.

Defendant's answer denied negligence and alleged that the proximate cause of the collision was the negligence of Gerald A. Frantz, the driver of the Ford automobile in failing to yield the right of way to the truck entering the intersection from the right of the driver of the Ford; also excessive speed, and the failure of said driver to keep his automobile under proper control and in failing to observe the traffic upon the highway, and particularly the westbound traffic at the intersection.

The issues of liability and damages were submitted to the jury. A verdict of $800 in favor of the plaintiff was returned by the jury. Plaintiff filed a motion for a new trial claiming inadequate damages, appearing to have been given under the influence of passion or prejudice. The court made a conditional order requiring the defendant to agree to an increase of the judgment to $2,400, otherwise a new trial would be granted.

Defendant refused to accede to the condition and filed a motion to set aside the conditional order. The motion was denied. A new trial was granted. Defendant objected

to a retrial asserting the court had exceeded its jurisdiction and abused any discretion that might exist.

A second trial was had. A verdict in favor of the plaintiff in the sum of $3,061 was awarded. Defendant moved to set aside the second verdict and reinstate the first verdict of $800. The motion was denied. Defendant made a motion for a new trial. The motion was denied. Kenneth Butte appealed to this court.

The errors relied upon by appellant as set out in his brief and argued are:

1. Abuse of discretion by the trial court in granting plaintiff's motion for a new trial.

2. Refusal to discharge the jury at the second trial on account of alleged prejudicial misconduct of plaintiff's counsel.

3. Improper instructions given to the jury and proper requested instructions denied.

4. Rulings on admissibility of evidence.

The points raised will be considered in the order above set forth.

1. Did the court abuse its discretion in granting plaintiff's motion for a new trial?

Section 104-40-7, R. S. Utah 1933, provides:

"The verdict of a jury may also be vacated and a new trial granted by the court in which the action is pending, on its own motion, without the application of either of the parties, when there has been such a plain disregard by the jury of the instructions of the court or the evidence in the case as to satisfy the court that the verdict was rendered under a misapprehension of such instructions or under the influence of passion or prejudice."

The section contains no reference to granting a new trial because of excessiveness or inadequacy of the verdict. Excessiveness or inadequacy of a verdict may be an element

in consideration of the question of disregard of instructions or the evidence or misapprehension of instructions, or as tending to show the verdict was influenced by passion or prejudice. The court may not set up its opinion or judgment against that of the jury based upon the amount of the verdict alone unless the amount is so disproportionate as to justify the inference that the instructions or evidence were disregarded. The statute provides when the court may interfere. A new trial may be granted upon the court's own motion "when there has been such a plain disregard by the jury of the instructions of the court or the evidence in the case as to satisfy the court that the verdict was rendered under a misapprehension of such instructions or under the influence of passion or prejudice."

Prior to granting the new trial and before taking the motion under advisement the court stated:

"I am inclined to think at this time that the verdict is too low; I do not mean to say that I will find that it is too low; but the matter will be taken under advisement."

The evidence discloses, in so far as it applies to the question of damages, that the deceased was a son of the plaintiff and about thirty years of age. The American Mortality Table indicates that the life expectancy of deceased at that age is thirty-five years and three months. The deceased was unmarried. The plaintiff is sixty years of age. His life expectancy was not shown. The deceased for long periods has aided in the support of his father and family of eight children, five of whom were at home. Other members of the family also contributed. It was shown that Paul, a brother of deceased and son of plaintiff, was earning $5 per day and Pete, another brother and son, was earning $3.65 per day and plaintiff was earning $4.25 per day. Spero, the deceased, was a machinist and had been earning $5.85 per day. He was looked to more than the others for support, payment of rent and general family maintenance during

times of depression. The amount the plaintiff might have received from the deceased was speculative,

As stated in the case of *Hirabelli* v. *Daniels*, 44 Utah 88, 138 P. 1172, and quoted with approval in the recent case of *Chatelain* v. *Thackeray*, 98 Utah 525, 100 P. 2d 191, 198:

> "We are * * * slow to interfere with a ruling granting or refusing a new trial on questions relating to damages."

While we so stated, we also held that the amount of the verdict is a matter exclusively for the jury. On the ground of adequacy of the verdict alone, the court may not interfere with the jury's verdict. However, if inadequacy or excessiveness of the verdict presents a situation that such inadequacy or excessiveness shows a disregard by the jury of the evidence or the instructions of the court as to the law applicable to the case as to satisfy the court that the verdict was rendered under such disregard or misapprehension of the evidence or instructions or under the influence of passion or prejudice then the court may exercise its discretion in the interest of justice and grant a new trial. It may be that a verdict small in amount or large in amount is clearly the result of passion or prejudice. It is seldom that the amount of the verdict standing alone is so inadequate or excessive as to indicate passion or prejudice. *Miller* v. *Southern Pacific Co.*, 82 Utah 46, 21 P. 2d 865. In order to eliminate speculation as to the basis of the exercise of judicial discretion in granting new trials, the record should show the reasons and make it clear the court is not invading the province of the jury. The trial court should indicate wherein there was a plain disregard by the jury of the instructions of the court or the evidence or what constituted bias or prejudice on the part of the jury. If no reasons need be given the province of the jury may be invaded at will. With no indication as to the basis for exercise of the power vested in the court to grant new trials the appeal tribunal would be left to analyze the matter

from the evidence, the record, and the instructions. It would be required to search out possible reasons for agreeing or disagreeing with the trial court in the exercise of a discretion. The exercise of a judicial discretion must be based upon some facts notwithstanding great latitude is accorded the trial court in such matter. *Klinge* v. *Southern Pacific Co.*, 89 Utah 284, 57 P. 2d 367, 105 A. L. R. 204.

We conclude that the trial court did not err in granting a motion for a new trial. It may be there was sufficient in the record of the former trial to justify the trial court in concluding the jury had disregarded or misconceived the instructions given or the evidence. Damages in the sum of $800 may have seemed sufficiently inadequate as to cause the court to think the verdict was the result of bias or prejudice. Whether such bias or prejudice existed we have no means of determining except from the amount of the verdict. See *Chatelain* v. *Thackeray,* supra.

2. Refusal of the trial court to discharge the jury at the second trial on account of alleged prejudicial conduct of plaintiff's counsel.

Human frailties seem to guide the motives of both parties to a personal injury suit when the defendant has insurance protection. The defendant's counsel is tender about any reference to insurance, the plaintiff's counsel knowing human nature nad sympathies leaning to relief when no direct imposition of punishment or hurt may be the direct result is keen to get before the jury such information as will enhance the amount of the verdict. A suggestion that insurance exists is thought to furnish a motive or a temptation to trespass. Neither this court nor the trial court is concerned about the question as to whether a defendant carries insurance. Nor should the jury be so concerned. The cases indicate that this question, which should not be and is not a matter of concern, is often injected in indirect ways upon this matter of insurance giving rise to many cases. Sometimes the claim of prejudicial error is sustained, sometimes not.

In this jurisdiction the claimed prejudice was not sustained, but the rule and its limitations and exceptions as to injuries about insurance were clearly stated in the case of *Balle* v. *Smith*, 81 Utah 179, 17 P. 2d 224, 228. The court suggests the question:

"To what extent, if at all, counsel for plaintiff may examine a juror with reference to his connection either as stockholder, officer, or employee, or debtor or creditor in an insurance company, which is defending a case pursuant to a contract of insurance with the defendant, is a question of first impression in this court."

After indicating the universal rule is that it is immaterial whether a defendant in a negligence case is carrying liability insurance, it is declared that in so far as the negligence issue is concerned such testimony is wholly inadmissible. The question here, as in the case of *Balle* v. *Smith*, supra, is not one so much relating to the testimony of witnesses, though an objection was raised upon that ground also, as a question as to what extent a plaintiff may go in the examination of jurors to determine their fitness and freedom from bias, prejudice or interest in the cause. The authorities are discussed in the Balle-Smith case and while the ruling as to the question asked a juror: "Are you acquainted in any way with what is known as Inter-Mountain Lloyds?" was only indirectly involved, yet the court held that:

"* * * plaintiff was entitled to learn whether any juror is interested in or connected with any insurance or casualty company *that may be interested in the case as insurer of defendant's liability.*" (Italics ours.)

For the purpose of determining a juror's qualifications to sit in a given case if it has been made to appear properly that an insurance company is the real party in interest then it would appear proper to permit a plaintiff to ask a juror directly whether he is interested as a stockholder or officer or employee or debtor or creditor of the company so interested. Reasonable latitude should be given parties in ascertaining what affiliations jurors have

with an interested party. Here the matter should end. In the Balle-Smith case the approach was criticised as to the form of the question and was not permitted to be answered. The question was regarded as preliminary and therefore not reversible error. To substantially the same effect are the following cases: *Bergendahl* v. *Rabeler*, 131 Neb. 538, 268 N.W. 459; *Avery* v. *Collins*, 171 Miss. 636, 157 So. 695, 158 So. 552; *Holman* v. *Cole*, 242 Mich. 402, 218 N.W. 795; *Safeway Cab Service Co.* v. *Minor*, 180 Okl. 448, 70 P.2d 76; *Miller* v. *Kooker*, 208 Iowa 687, 224 N.W. 46. Within the rule of the cases it was prejudicial error for counsel to ask each of the jurors if he were an officer or stockholder of the Northwest Casualty Company of Seattle, Washington. The same ethical standards should be maintained in the questioning of jurors as of witnesses.

The case of *Alexiou* v. *Nockas*, 171 Wash. 369, 17 P.2d 911, 914, is direct authority that the examination of each juror, as was done in the instant case as to his insurance connection was prejudicial error. The court said: "The examination of the jurrors by respondents' counsel constituted reversible error. We cannot countenance such inappreciation of the ethics as counsel manifested. The purpose of his questions was patently to inform the jury that the loss would fall upon an insurance company instead of the appellant."

We are of the opinion it was reversible error for counsel to interrogate each juror as to whether he were a stockholder in a specifically named insurance company or generally so as to indicate that an insurance company was the probable real party in interest, a matter foreign to the issues in the case, when no preliminary questions had been asked.

3. Appellant assigns as error the giving by the court of instruction numbered 11, and particularly that part which reads as follows:

"In this case it was the duty of the defendant Kenneth Butte to drive his automobile on said highway, using reasonable care and prudence *so that he could avoid injuring anyone or colliding with any person on the highway.*"

The instruction if followed practically instructed the jury that the defendant in addition to keeping a proper lookout and requiring the exercise of ordinary care and prudence having in consideration due vigilance commensurate with the circumstances and surroundings required him to use such care and prudence so that he could avoid colliding with anyone, regardless of whether such one were or were not guilty of negligence.

That part of the instruction failed to take into consideration the right of defendant to assume that all other persons upon the highway would use ordinary care and reasonable precaution for their own safety until the contrary appeared.

4. Other errors are assigned as to admissibility of evidence such as the answer of Gerald Frantz that his claim had been "taken care of," and others in the nature of conclusions. None of the questions raised by other assignments are likely to recur. We therefore do not discuss them.

The cause is remanded for a new trial pursuant to the instructions and rules herein set forth. Appellant to recover costs. Such is the order.

LARSON and PRATT, JJ., concur.

McDONOUGH, Justice (concurring).

I concur in the order granting a new trial. The record of the trial in which the $800 verdict was rendered is not before us. Consequently, we must assume that the evidence there adduced was such that the court was justified in concluding that such verdict was rendered by the jury under a misapprehension of the instructions of the court or under the influence of passion or prejudice.

As to the third point discussed, while Instruction No. 11 was, taken alone, erroneous, I am of the opinion that the instructions, read as a whole, could not have mislead the jury. Consequently, the giving of such instruction was not reversible error.

As to the second point, I am of the opinion that the errors involved therein merit reversal. Three separate exceptions are involved: (1) The overruling by the court of defendant's objection to the questions asked of the jurors, discussed in the opinion, and the refusal to order a mistrial because of the alleged misconduct in asking the question; (2) the court's overruling of objection to a question propounded to the witness Christensen as follows: "Q. Now, let me call your attention to this. Right after the accident you made out an affidavit to—you gave a statement to a man by the name of Parkinson, who is an adjuster for an insurance company?", and the refusal of the court to order a mistrial based on the asking of such question by counsel; and (3) misconduct of counsel during his argument to the jury in that he stated to the jury that "on the day of the accident an investigator was out at the scene of the accident in this case;" and, further in his closing argument to the jury stated in substance, that the defendant secured an attorney who spends all his time in the defense of this class of cases.

As pointed out in the case *Balle* v. *Smith*, supra, a juror may be examined as to his connection, if any, with a casualty company, but as the court states at page 192 of 81 Utah, 17 P. 2d at page 230:

"The examination must be in good faith and precaution taken to ask the questions in such manner as will not convey the impression that the defendant is in fact insured. It would be misconduct on the part of counsel for plaintiff * * * to so frame his questions that they go beyond what is reasonably necessary to serve the legitimate purpose of eliciting the fact he is entitled to adduce in order to secure a jury free from bias and prejudice."

See also *Reid* v. *Owens*, 98 Utah 50, 93 P. 2d 680, 684, 126 A. L. R. 55, 62.

Such rule was violated by counsel. The first question on the subject of insurance asked of almost every prospective juror was whether he was interested as an officer, stockholder, or employee in the Northwest Casualty Company of Seattle, Washington. No preliminary inqury was made as to the juror's connection with casualty companies. Though such general question had been asked and the answer had been given in the affirmative, the next step would properly be—unless the purpose of the questioner was to reveal the irrelevant fact—to inquire as to what company or companies he was connected with. The repetition to the jurors of the name of a specific casualty company of necessity would convey to the minds of the jurors the thought that such company was interested in the case. When there is added to this conduct the further allusions, hereinabove set out, to the probable connection of an insurance company with the action, the juror would be surprisingly naive who would not understand that the real party in interest was the named insurance company. In view of the comparative frequency with which the problem here involved arises it is thought proper to call to the attention of counsel and trial courts the method of examining jurors relative to their interest, if any, in insurance companies suggested by the Supreme Court of Michigan in *Harker* v. *Bushouse*, 254 Mich. 187, 236 N. W. 222, and approved by this court in *Balle* v. *Smith*, supra, at page 192 of 81 Utah, 17 P. 2d 224. Were such suggestion followed, we would perhaps be less often called upon to pass upon the question just discussed.

WOLFE, Justice (concurring in the result).

I concur in the result for the reasons expressed by Mr. Justice McDONOUGH as to the second and third points.