377 P.2d 186

**Paul HILL, by his guardian ad litem, James L. Hill, Plaintiff and Appellant,**

v.

**Rex CLOWARD and Rubin McDougal, d/b/a The Frostop, Defendants and Respondents.**

No. 9687.

Supreme Court of Utah.

Dec. 27, 1962.

John E. Stone, Mark S. Miner, Salt Lake City, for appellant.

Rich & Strong, Salt Lake City, for respondents.

CROCKETT, Justice.

This is a suit for injuries received by Paul Hill, an 11-year-old boy, when he fell off the running board of an ice cream truck driven by the defendant, Rex Cloward, owned by the defendant, Rubin McDougal. Upon special interrogatories the jury refused

· to find that the defendant was negligent and found that the plaintiff was.

Plaintiff contends that he was deprived of a fair trial because of:

A. *Remarks concerning insurance in the presence of the jury.*

B. *Giving a jury instruction subsequent to and separate from the others.*

The incident resulting in plaintiff's injury occurred on the afternoon of August 8, 1961. Defendant, Rex Cloward, was operating the truck, selling ice cream on the streets of Kearns, Utah. Plaintiff Paul Hill and another boy about his age, Bruce Davenport, approached and asked Rex for free ice cream cones, which request was refused. Rex says that he saw Bruce get on the running board on one side of the truck and get off before he started up. But he did not see what became of Paul, except that he went toward the back of the truck. (It is now apparent that he got on the running board on the other side.) After Rex proceeded forward at a slow rate of speed he heard Paul shout that he wanted to get off. Rex called that he would let him off at the stop sign, which was a short distance ahead; proceeded to it, and stopped. He says that he heard nothing further from Paul and therefore assumed that he got off; then went forward a short distance when he heard a yell and stopped. Paul had either "jumped, fallen or slipped" from the truck and suffered some bruises, abrasions and a fractured left clavicle. He made a good recovery from these injuries without any permanent after-effects.

A. *Mention of insurance.*

It is somewhat of a novelty for a plaintiff to be contending that it was to his prejudice to bring up the subject of insurance in the presence of the jury. This is generally thought to be to the advantage of plaintiffs and to the disadvantage of defendants. The latter are wont to complain that when this admittedly touchy subject is referred to, and the jury suspects that it is not the defendant personally, but an insurance company, who will pay any verdict, it is apt to deal lightly with disputed issues of fact and to be over-generous in awarding damages.[1]

Plaintiff here reverses the usual situation, claiming that mention of insurance by the defendant, Rubin McDougal, whom plaintiff called as the first witness, was improper and prejudicial to the plaintiff:

"COURT: [Mr. McDougal] Why don't you bring the truck up and let us look at it? Can it be brought up?

"MR. McDOUGAL: I haven't any insurance or license on it. I have the truck, yes.

"COURT: We can take care of your license, bring it up and let us look at it, will it run?

1. See Balle v. Smith, 81 Utah 179, 17 P.2d 224; Saltas v. Affleck, 99 Utah 381, 105 P.2d 176.

"A. Certainly it will run. I have no insurance on it at the present time.

"MR. STRONG: Will you bring it up?

"A. Surely, if someone wants to put the insurance on it and take the responsibility."

Plaintiff argues that it is such common knowledge that motor vehicles, particularly those in commercial use, are usually insured, that the jury would otherwise have so assumed; and that these statements were an attempt to convey to the jury the impression that the defendant was a poor man; that he had no insurance, and that his license had been canceled on that account.[2]

■■ It seems hardly necessary to state that the matter of insurance is quite immaterial to issues as to liability and damages, or the amount thereof. It is also true that inasmuch as the defendant is entitled to have this extraneous matter excluded from the case, the plaintiff is entitled to the same protection if he so desires. If the defendant were allowed to show noninsurance, and the plaintiff allowed to rebut it, the mischief which could develop from preoccupation with the immaterial issue is obvious. In the instant situation candor requires recognition that. it was improper for the defendant to inject the matter of insurance into the case.

■ But there is an insuperable difficulty with the plaintiff's position. His counsel let the incident pass without objection and without a request to rectify any harm he thought had been done. Fair play and good conscience require that he do so at the earliest opportunity. It would be manifestly unjust to permit a party to sit silently by, believing that prejudicial error had been committed, proceed with the trial to its completion, and allow the jury to deliberate and reach a verdict, to see if he wins, then if he loses, come forward with a claim that such an error rendered the verdict a nullity. If this could be done, proceedings after such an occurrence would be in vain and thus an imposition upon the court, the jury and all concerned. The court will not countenance any such mockery of its proceedings. If something occurs which the party thinks is wrong and so prejudicial to him that he thereafter cannot have a fair trial, he must make his objection promptly and seek redress by moving for a mistrial, or by having cautionary instructions given, if that is deemed adequate, or be held to waive whatever rights may have existed to do so.[3]

The foregoing disposition of the plaintiff's contention as to the mention of insurance renders it unnecessary to consider the dispute between the parties as to wheth-

**2.** See Sec. 41–12–5(b), U.C.A.1953.

**3.** See 39 Am.Jur., p. 110; State v. Thompson, 58 Utah 291, 199 P. 161, 38 A.L.R. 697.

er the statements made were actually adverse to plaintiff. Yet it is not amiss to observe that they need not necessarily be taken as an indication that the defendant did not have insurance at the time the accident happened. The statements were made during the trial, on February 19, 1962; whereas, the accident had occurred on August 6, 1961. The statement, "I haven't any insurance or license on it," was followed after only one other question with the remark, "I have no insurance on it at the present time." (Emphasis added.) Defendant argues, not without plausibility, that these statements, taken together, could just as reasonably be interpreted as implying that the defendant did have insurance when the accident occurred as that he did not.

B. *Giving a supplemental instruction.*

■ After the instructions to the jury had been given, and counsel had argued the case to the jury, the trial court gave a further instruction relating to the alleged contributory negligence of the plaintiff. The claim is not that the instruction was in error, but that giving it on this subject, separately and at a later time than the others, gave the jury the impression that the trial court thought it of particular significance, thereby unduly emphasizing it in the jury's mind and causing them to return the adverse verdict on that ground.

■ This contention is unsound. The jury were also instructed not to single out any particular instruction and place emphasis on it, but to consider them all as a whole and to regard each in the light of all of the others. The purpose of the requirement in Rule 51, U.R.C.P. that objections to the instructions be made "before the jury retires to consider its verdict" is that if the objections call attention to error, correction may be made before the jury goes to deliberate. This is the primary function of objections, and it is not simply to lay a foundation for possible reversal by the losing party if that eventuality occurs, as sometimes seems to be assumed.

We are in accord with the conclusion of the trial court that the objective of the trial was accomplished: that the parties were afforded a full and fair opportunity to present their evidence and contentions and that there is no valid ground for reversal of the jury verdict and judgment.[4]

Affirmed. Costs to defendant (respondent).

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

4. See statement in Hales v. Peterson, 11 Utah 2d 411, 360 P.2d 822.