Emmanuel N. ONYEABOR, Plaintiff
and Appellant,

v.

PRO ROOFING, INC., a Utah corpora-
tion, and Pam Bates, Defendants
and Respondents.

No. 870265–CA.

Court of Appeals of Utah.

Feb. 13, 1990.

Robert B. Sykes and M. Gale Lemmon,
Salt Lake City; for plaintiff and appellant.

William A. Stegall, Jr., Salt Lake City,
for defendants and respondents.

Before BENCH, BILLINGS and
GREENWOOD, JJ.

BENCH, Judge:

Plaintiff appeals from a jury verdict in
his favor in an action arising from injuries
sustained in a motor vehicle accident. We
affirm in part and reverse in part.

FACTS

On June 15, 1984, plaintiff Emmanuel N.
Onyeabor was driving home for lunch from
his job as a carpenter on a construction
project in Midvale, Utah. At approximate-
ly 1:10 p.m., he was traveling north on 900
East in unincorporated Salt Lake County,
approaching the intersection of Fort Union

Boulevard (7105 South). Plaintiff's vehicle was in the inside of two northbound lanes and was traveling at or near the posted speed limit of 45 m.p.h.

As plaintiff approached the intersection, a car driven by defendant Pam Bates entered 900 East from a shopping center on the southeast corner of the intersection. Bates was en route to perform an errand for her husband's business, defendant Pro Roofing, Inc. Bates intended to turn west onto Fort Union Boulevard from 900 East, and crossed over the northbound lanes of 900 East to enter the left turn lane. The drivers' views of each other were obstructed by a northbound vehicle between them. When Bates's car suddenly entered plaintiff's lane of traffic, plaintiff attempted to stop, but could not, and skidded into Bates's vehicle. The collision caused minor damage to the right side of his car and the left rear bumper of Bates's car.

Moments after the collision, plaintiff approached Bates's car and began shouting and cursing at her and pounding on the driver's side window. Bates remained in her vehicle. Eventually, plaintiff left to contact the sheriff's department, which dispatched a deputy to investigate the accident. The deputy's report indicated that neither party complained of injury at the time of the accident.

Six months later, plaintiff brought suit, alleging that he had sustained "severe and continuing bodily injuries" in the accident, and sought damages for medical expenses and loss of earnings. The record indicates that he was treated in August 1984 for "low back pain," which he said he had experienced since the accident. This problem was subsequently diagnosed as a herniated lumbar disk and was treated without surgery.

Plaintiff's continuing treatment necessitated a continuance of the trial originally scheduled for August 1985. Trial was continued without date, and plaintiff's attorney withdrew from the case. Plaintiff retained new counsel and trial was reset. Shortly thereafter, plaintiff again dismissed his attorney. One month after retaining new counsel, and over two years after the accident, plaintiff filed a motion to amend his complaint to allege damages for "closed-head brain injury and/or post-traumatic syndrome." The motion was granted with defendants' stipulation, and plaintiff amended his complaint to allege damages in excess of $600,000 for back, shoulder, head, and left wrist injuries. Plaintiff subsequently submitted an extensive pretrial brief, claiming that he was "permanently and totally disabled from future meaningful employment." He sought damages in the amount of $1,152,498.79.

Trial was held February 2–18, 1987. After more than thirty witnesses testified and more than a hundred exhibits were received, the jury returned a special verdict in favor of plaintiff. Total damages were found to be $16,850, but the jury determined that 25% of the negligence involved in the accident was attributable to plaintiff. Plaintiff was awarded $12,637.50 plus interest and costs, and the trial court denied his "Motions for a New Trial, for Judgment N.O.V. and for Additur."

## ISSUES

Plaintiff appeals the jury verdict, claiming that: (1) the trial judge was biased against him, and that such bias was manifested in the judge's demeanor and comments on the evidence; (2) the trial court erred by permitting a defense witness to testify at trial without adequate notice; (3) there was insufficient evidence to support the jury's finding that plaintiff was partially negligent; (4) the trial court abused its discretion in denying plaintiff's motion for additur or, in the alternative, new trial; and (5) the trial court erred in making certain evidentiary rulings.

## ANALYSIS

### I

The procedure for resolving allegations of judicial bias is provided by Utah R.Civ.P. 63(b):

> Whenever a party to any action ... or his attorney shall make and file an affidavit that the judge before whom such action ... is to be tried ... has a bias or

prejudice ..., such judge shall proceed no further therein, except to call in another judge to hear and determine the matter.

Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed as soon as practicable after ... such bias or prejudice is known.

*See also Birch v. Birch*, 771 P.2d 1114, 1116 (Utah Ct.App.1989).

In this case, plaintiff never filed such an affidavit, even after the alleged bias admittedly became known to him during the first day or two of trial.[1] We need not decide, however, whether the sole failure to file this affidavit was procedurally fatal to the claim of bias, since there are a number of other infirmities underlying plaintiff's claim.

Defendants assert that plaintiff failed to make contemporaneous objections to the court's comments alleged to be prejudicial. "If something occurs which the party thinks is wrong and so prejudicial to him that he thereafter cannot have a fair trial, he must make his objection promptly and seek redress by moving for a mistrial, or by having cautionary instructions given, if that is deemed adequate, or be held to waive whatever rights may have existed to do so." *Hill v. Cloward*, 14 Utah 2d 55, 58, 377 P.2d 186, 188 (1962). Otherwise, "[i]t would be manifestly unjust to permit a party to sit silently by, believing that prejudicial error had been committed" and then "if he loses, come forward" claiming error. *Id.*

Plaintiff states that, "Obviously, Mr. Onyeabor's counsel was reluctant to object every time the court commented on the evidence." Although reluctance to make frequent objections may be understandable, we failed to find in the portions of the record highlighted by plaintiff even one such contemporaneous objection. Nor can we find any motion made by plaintiff for a mistrial. Plaintiff states that such a mo-

tion was "impractical because Mr. Onyeabor needed to have the case tried for medical reasons."

■ Plaintiff nonetheless argues that he made a proper objection in chambers after the third day of trial. The discussion between counsel and the court went unrecorded because the reporter had departed for the day. The precept that a record should be made of all proceedings applies to conferences in chambers as well as courtroom proceedings. *Birch*, 771 P.2d at 1116. "The burden is on the parties to make certain that the record they compile will adequately preserve their arguments for review in the event of an appeal." *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983).

We are thus constrained by the record, which includes the following remarks by the trial judge during the hearing on plaintiff's motion for new trial:

You have made mention of the fact ... that some of your witnesses sitting in the courtroom told you that it was obvious that the judge didn't like you. Well, again if they got that impression, I'm sorry, because that isn't true....

But you go on in your brief stressing the fact that my conduct throughout the trial gave the jury a powerful message that your methods were time consuming, meaningless, perhaps an attempt to put something over on the jury. That surprised me.... And you suggest that my conduct, by the tone of my voice, by the shrug of my shoulders, by a sigh, gave a powerful message to the jury that I didn't think much of your case, and I was trying to hurry the case along and not willing to give you a fair shake.... The only way I can respond to that sort of indictment of the Court's conduct at the trial is by saying I plead not guilty.... I deny that throughout the trial I did things intentionally or unintentionally to discredit you or your witnesses or to the face of the jury.

---

1. *See Madsen v. Prudential Fed. Sav. & Loan*, 767 P.2d 538, 542 (Utah Ct.App.1988) (Motions to disqualify must be made promptly and may not be delayed so as to appear that they are filed only when rulings are unfavorable. "Not only is such a tactic unfair, but it may evidence a belief that the judge is not in fact biased.").

■ There is nothing to contradict defendants' observation that the questioned remarks were "simply explanatory statements made by the court either in the course of ruling on objections, or limiting the admissibility of evidence or testimony, or clarifying the testimony given by a witness."[2] Based on our review of the record, including the instructions given to the jury,[3] we reject plaintiff's claim of bias.

## II

■ Plaintiff also claims that the court erred in admitting the testimony of Dr. Lincoln Clark, an expert witness for the defense. Plaintiff describes Dr. Clark as a "surprise" witness in that plaintiff had no notice of his planned testimony until six business days before trial and did not receive a copy of Dr. Clark's report until the third day of trial.

Defendants retained the services of Dr. Clark, a psychiatrist, after a previous expert was unable to continue his involvement in the case due to ill health. After interviewing plaintiff, Dr. Clark determined that his involvement in the case constituted a significant risk to his safety and the safety of his family. On December 5, 1986, the court continued the trial date based on Dr. Clark's assertion that his disassociation with the case was final. On January 21, 1987, however, defendants filed an amended witness list on which Dr. Clark's name reappeared. Defendants contended that Dr. Clark had reevaluated his decision, and became convinced he had overstated the threat to his safety. Plaintiff then filed a motion in limine to exclude Dr. Clark as a witness. Judge Croft heard the motion on January 30, the Friday before trial, and decided to permit Dr. Clark to testify provided that a written report was submitted to plaintiff the first day or two of trial. A copy of that report was subsequently delivered to plaintiff early Wednesday morning, the third day of trial. Dr. Clark testified on February 13, nine days later; plaintiff neither objected to the testimony nor moved for a continuance.

■ Defendants argue that plaintiff failed to preserve the issue for appeal by failing to object at the time Dr. Clark was called to the witness stand. However, plaintiff's pretrial motion to exclude the testimony was adequate to preserve the issue. "A matter is sufficiently raised if it is submitted to the trial court, and the court is afforded an opportunity to rule on the issue." *Hardy v. Hardy*, 776 P.2d 917, 924 (Utah Ct.App.1989) (quoting *State v. One 1979 Pontiac Trans Am*, 771 P.2d 682, 684 (Utah Ct.App.1989)).

The essence of plaintiff's objection appears to be that he was prejudiced because there was insufficient time prior to trial to depose Dr. Clark. However, defendants appear to have substantially complied with rule 26(e)(1) of the Utah Rules of Civil Procedure requiring a party to

> seasonally supplement his response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Dr. Clark was identified twelve days before trial and plaintiff's counsel was familiar with Dr. Clark from his testimony in another head injury lawsuit. The subject matter and substance of the expert's testimony was contained in the report delivered to plaintiff nine days before Dr. Clark testified.

---

**2.** Plaintiff has attempted to supplement the record on appeal with affidavits attesting to alleged nonverbal manifestations of bias on the part of the trial judge. Although his motion was provisionally granted pending the hearing of this appeal, affidavits which are not part of the record below will generally not be considered on appeal. *See State v. Aase*, 762 P.2d 1113, 1117 (Utah Ct.App.1988). Accordingly, we now deny plaintiff's motion to supplement the record.

**3.** *See, e.g.,* Jury Instruction No. 2:

> Anything done or said by me during the trial should not be considered by you as indicating my view on any issue in this case. Any belief you may have as to what my view may be should receive no consideration by you in your deliberations.

Even if we assume that the admission of Dr. Clark's testimony constituted error, plaintiff fails to demonstrate how he was prejudiced. Any error in the admission of evidence must be disregarded unless it affects the substantial rights of the parties. Utah R.Civ.P. 61. This provision has been construed as "placing upon an appellant the burden of showing not only that an error occurred, but that it was substantial and prejudicial in that the appellant was deprived in some manner of a full and fair consideration of the disputed issues by the jury." *Ashton v. Ashton,* 733 P.2d 147, 154 (Utah 1987). Dr. Clark was but one of five expert witnesses called by defendants in response to the testimony of plaintiff's fifteen experts. In view of the extensive presentation of expert testimony and plaintiff's thorough cross-examination of Dr. Clark, plaintiff has failed to demonstrate prejudice resulting from the admission of Dr. Clark's testimony. Accordingly, we conclude that plaintiff's claim is without merit.

### III

■ We next address plaintiff's contention that there was insufficient evidence to support a finding of negligence on the part of plaintiff. A jury verdict will be reversed "only if, viewing the evidence in the light most favorable to the verdict, there is no substantial evidence to support it." *Canyon Country Store v. Bracey,* 781 P.2d 414, 417 (Utah 1989) (quoting *In re Estate of Kesler,* 702 P.2d 86, 88 (Utah 1985)). An appellant must marshal all the evidence supporting the verdict and then show that the evidence is insufficient to support it even when viewed in the light most favorable to the verdict. *Von Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985).

We have reviewed the evidence marshaled by plaintiff and agree that it cannot support a finding that plaintiff was partially negligent. There is no dispute that plaintiff was traveling in his own lane of traffic at or near the speed limit before the accident. The relevant statutory provision in effect at the time provided that:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or ... when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Utah Code Ann. § 41–6–46(1) (1981).

Although a jury may determine that the operation of a motor vehicle within the speed limit may be negligent under given circumstances, *see Lochhead v. Jensen,* 42 Utah 99, 102–03, 129 P. 347, 348–49 (1912), there is no evidence indicating that plaintiff drove faster than was reasonable and prudent, or that the speed was unsafe and inappropriate, or that road or weather conditions necessitated a slower speed. Nor was there evidence of special hazards or unsafe driver behavior. The only evidence that was offered to suggest that plaintiff was negligent was the testimony of one of the defense experts who was "concerned" that plaintiff's car was still moving at the speed limit "that close to an intersection." In short, we could find no substantial evidence that would support a reduction in damages for plaintiff's negligence. Accordingly, we reverse the special verdict attributing 25% of the total negligence to plaintiff.

### IV

■ The final contention of plaintiff which we fully address is that involving the trial court's denial of his motion for additur or, in the alternative, a new trial. Under rule 59(a)(5) of the Utah Rules of Civil Procedure, a new trial may be granted or a new judgment may be entered if the influence of passion or prejudice resulted in inadequate damages. "However, when the damages are not so inadequate as to indicate a disregard of the evidence by the jury, a court is not empowered to entertain a motion for an additur." *Dupuis v. Nielson,* 624 P.2d 685, 686 (Utah 1981). This deference given on review of a damages

award stems from the "prerogative of the jury to make the determination of damages." *Jensen v. Eakins,* 575 P.2d 179, 180 (Utah 1978). "[W]e cannot substitute our judgment for that of the fact finder unless the evidence compels a finding that reasonable men and women would, of necessity, come to a different conclusion." *Id.*

Plaintiff alleged various injuries resulting from the accident, including injuries to his back and head. The jury's verdict obviously reflects the fact that they believed plaintiff's evidence of a back injury, but either did not believe that there was a head injury or that it was not caused by the accident.

In closing argument, defense counsel summarized plaintiff's damages that were consistent with a back injury. He calculated plaintiff's medical expenses to be $1,835. The jury awarded plaintiff $1,850. Defense counsel estimated plaintiff's loss of earnings to be $3,200. The jury awarded $4,500. Defense counsel suggested that $4,000 was a reasonable sum for general damages for pain and suffering during the four months following the accident. The jury awarded plaintiff $4,000. The jury also awarded plaintiff $5,000 for future medical and psychotherapy expenses and $1,500 for future lost earnings. These amounts appear to be reasonable, particularly in view of other evidence that plaintiff may have had a preexisting back condition which was aggravated by the accident and an incident in a "karate class."

On the other hand, defense counsel argued that plaintiff demonstrated "no loss of consciousness, no amnesia, no external sign of injury" after the accident—in short, "no sound evidence" of brain. injury. This hotly disputed question of fact was for the jury, whose exclusive province it is to weigh the evidence and determine the credibility of witnesses. *See Steele v. Breinholt,* 747 P.2d 433, 436 (Utah Ct.App.1987). We conclude that "reasonable minds acting fairly" could lack "reasonable certainty that plaintiff suffered such injury and damage." *Dunn v. McKay, Burton, McMurray & Thurman,* 584 P.2d 894, 896 (Utah 1978). Thus, plaintiff simply failed to convince the jury of his entire case.

With respect to plaintiff's claims regarding various evidentiary rulings, a trial court's determination to admit or exclude evidence will not be overturned in the absence of an abuse of discretion. *Pearce v. Wistisen,* 701 P.2d 489, 491 (Utah 1985). We have reviewed the rulings in question and conclude that there was no abuse of discretion.

In summary, we affirm the finding of liability against defendants, but reverse the finding of negligence attributable to plaintiff and remand the case to modify the judgment consistent with this opinion. Each party to bear its own costs.

BILLINGS and GREENWOOD, JJ., concur.