**Lynn NIELSEN, Plaintiff and Appellant,**

v.

**PIONEER VALLEY HOSPITAL and D.M. Dickson, Defendants and Appellees.**

No. 890247.

Supreme Court of Utah.

April 2, 1992.

Daniel G. Darger, Salt Lake City, for Lynn Nielsen.

David W. Slagle, Elizabeth King Brennan, Salt Lake City, for Pioneer Valley Hosp.

Gary D. Stott, Michael A. Peterson, Salt Lake City, for D.M. Dickson.

HOWE, Associate Chief Justice:

Plaintiff Lynn Nielsen appeals from an adverse judgment entered on a jury verdict of no cause of action in this medical malpractice case. She contends that the jury instructions were confusing and contradictory to the point of being prejudicial.

## FACTS

On February 27, 1985, Nielsen was admitted to defendant Pioneer Valley Hospital for knee surgery. She had a history of dental problems and during the previous year, had undergone significant dental work. On the morning of her knee surgery, she was interviewed by hospital personnel and an anesthesiologist, defendant Dr. D.M. Dickson. She informed them of her dental work and of her concern for protecting it.

During her surgery, she was under general anesthesia. Approximately two hours later, while she was regaining consciousness in the recovery room, a nurse discovered that several of Nielsen's teeth were broken and her bridgework damaged.

Nielsen brought this action against both Dr. Dickson and the hospital. After the jury had retired to deliberate, Nielsen's counsel entered objections on the record to jury instructions 16 and 19. These instructions are set out later in this opinion. The jury found that neither Dr. Dickson nor the hospital was negligent and returned a verdict of no cause of action against Nielsen. She appeals, assailing instructions 16 and 19 because they confused and contradicted the res ipsa loquitur theory of her case.

## PROCEDURAL ISSUE

Before considering the merits of the two instructions, we must first address a matter of procedure. Defendants contend that plaintiff's counsel failed to adequately and timely enter his objections to the two instructions on the record. Defendants urge us, therefore, to refuse to reach the merits of plaintiff's appeal.

The law requires specificity and timeliness of any objections to jury instructions. These requirements are set out in Utah Rule of Civil Procedure 51. The rule states in part: "[O]bjections may be made to the instructions after they are given to the jury, but before the jury retires to consider its verdict.... In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." Utah R.Civ.P. 51; *see Godesky v. Provo City Corp.*, 690 P.2d 541, 546 (Utah 1984).

This court has previously stated the underlying purpose of the specificity requirement of this rule. An objection to an instruction must be sufficiently precise to alert the trial court to all claimed errors and to give the judge an opportunity to make any corrections deemed necessary. *Redevelopment Agency of Salt Lake City v. Barrutia*, 526 P.2d 47, 51 (Utah 1974); *Employers' Mut. Liability Ins. Co. v. Allen Oil Co.*, 123 Utah 253, 263, 258 P.2d 445, 450 (1953). When the trial judge has such notice, he or she is able to correct any error before the jury retires. *Beehive*

*Medical Electronics, Inc. v. Square D Co.,* 669 P.2d 859, 860–61 (Utah 1983).

The specificity requirement also serves the purpose of preserving the objection for appeal. *Morgan v. Quailbrook Condominium Co.,* 704 P.2d 573, 579 (Utah 1985). This, though, is not the primary purpose of the rule. "[I]t is not simply to lay a foundation for possible reversal by the losing party if that eventuality occurs, as sometimes seems to be assumed." *Hill v. Cloward,* 14 Utah 2d 55, 59, 377 P.2d 186, 188 (1962).

■ Though Nielsen's objections were not textbook examples of specificity, they were sufficient. They were not mere repetitious orations that the jury instructions were inconsistent with or failed to state the law; they were more focused. For example, Nielsen's objection to instruction 19 was that "this is an improper statement of the law on the case of res ipsa loquitur, particularly the common knowledge exception applicable to that rule and applicable in this case." Such language adequately directed the trial judge's attention to the claimed error. Of course, the objections could have been better stated if counsel had had more time to work on them, but he had to dictate them under the stress and pressure of a trial. *Godesky,* 690 P.2d at 549 (Howe, J., concurring). In denying a motion for a new trial, the trial judge stated on the record that plaintiff's objections to instructions 16 and 19 were "adequate" to inform him of plaintiff's basis for complaint.

■ Rule 51 also requires objections to be made timely. It states that objections to instructions are to be made "before the jury retires to consider its verdict." Utah R.Civ.P. 51. This allows the trial court opportunity to correct any of the instructions before the jury begins deliberations. *Hill,* 14 Utah 2d at 59, 377 P.2d at 188. In the instant case, counsel for both plaintiff and Dr. Dickson made their objections on the record after the jury retired. This, however, was the trial judge's error, not counsel's. The judge did not afford counsel any opportunity to enter objections on the record before the jury retired. This

court should not enjoin Nielsen's appeal because of this irregularity by the trial court.

Before leaving this point, we reemphasize what we stated some twenty years ago. Under rule 51, trial judges are to take objections to jury instructions before the jury is dismissed to begin deliberations. It is all too common today to have counsel recite objections to the court reporter after the jury has retired and the judge has left the bench. This is ill-advised because it defeats the rule's primary function. *State v. Cowan,* 26 Utah 2d 410, 413, 490 P.2d 890, 892 (1971).

## JURY INSTRUCTIONS

Nielsen pleaded and proceeded to trial on two theories: (1) res ipsa loquitur and (2) common law negligence. The trial court gave the jury instruction 22 on res ipsa loquitur as follows:

The Court instructs you that in certain situations it is not necessary for the plaintiff in a medical malpractice action to present evidence of the defendants' negligence by expert testimony. Specifically, where the propriety of the treatment received is within the common knowledge and experience of the layman, expert testimony is unnecessary to establish the standard of care owed to the plaintiff. The plaintiff must, however, establish by the evidence that:

1. The accident was of a kind which, in the ordinary course of events, would not have happened had the defendant(s) used due care;

2. The instrument or thing causing the injury was at the time of the accident under the management and control of the defendant(s); and

3. The accident happened irrespective of any participation at the time by the plaintiff.

If you find from a preponderance of the evidence that all three of the above criteria have been met, then you may find an inference of negligence from those circumstances. This does not mean that negligence is necessarily es-

tablished, it merely creates an inference which may be rebutted by the defendant or defendants.

■ No objection was made to this instruction by either party, and on this appeal, defendants do not dispute that Nielsen had the right to proceed on a res ipsa loquitur theory. Indeed, this is a textbook res ipsa loquitur case. Nielsen was unconscious the entire time her teeth and bridgework were being broken. She did not know who caused the damage or how it occurred. This evidentiary doctrine was created to permit a plaintiff to establish a cause of action under circumstances when it would be impossible to do so under a common law negligence theory. Res ipsa loquitur allows the plaintiff to go forward on circumstantial evidence alone. *Dalley v. Utah Valley Regional Medical Center*, 791 P.2d 193, 196 (Utah 1990) (citing *Anderton v. Montgomery*, 607 P.2d 828, 833–34 (Utah 1980)). In *Dalley*, we stated that res ipsa loquitur

> establishes a rebuttable inference of negligence and causation that puts the burden of going forward with the evidence upon those persons who were awake, aware, and conscious at the time of the injury, who were responsible for the plaintiff's safety at a time when he or she was not in a position to assume that responsibility.

*Dalley*, 791 P.2d at 200.

In her pretrial deposition, Nielsen and her husband testified that Dr. Dickson told them in the recovery room that he had no idea how her bridgework had been damaged. At the trial, however, Nielsen and her husband testified that Dr. Dickson told them he had broken the dental work with a laryngoscope, which resembles a metal spatula. Nielsen called as a witness Dr. Rees Jorgensen, a dentist, who testified that Nielsen's teeth may have been broken by a laryngoscope, which is sometimes used to insert a plastic airway into the patient's mouth to facilitate breathing. However, Dr. Dickson testified that following surgery, as Nielsen was being wheeled into the recovery room, he examined her front teeth and found them to be in perfect condition. He testified that he did not know how her bridgework had been broken, but that he had told her in the recovery room that it may have occurred by her clamping down on the airway which he inserted into her mouth. Both Dr. Dickson and his medical expert witness, Dr. Lawrence Reichmann, testified that teeth can be broken when a patient bites down on an airway and that such damage can occur without any negligence whatsoever on the part of the anesthesiologist. Dr. Dickson testified that he had not used a laryngoscope in administering anesthetic to Nielsen.

At the request of counsel for Dr. Dickson, the trial court gave the jury instructions 16 and 19. Instruction 16 stated in part:

> A physician is not a guarantor of successful results, and therefore, no presumption of negligence arises from the fact of an adverse event occurring during a defendant's treatment.

> If complications or adverse results occur in connection with a doctor's treatment of a patient, such facts, in and of themselves, do not prove that the doctor was negligent.

Instruction 19 stated:

> In determining whether the physician properly fulfilled his duty imposed upon him as a physician, in his treatment and care of plaintiff, you are not permitted to use a standard derived from your own experience with physicians, nor any other standard of your own.

> The standard of professional care by which the physician is to be judged by you is that degree of learning, care and skill ordinarily possessed and used by other physicians undertaking the care of a patient under similar circumstances in the same field of practice at the time such treatment and care was rendered.

> The only way you may properly learn such standard and thus determine whether or not the physician in this case conformed to it, is through evidence presented during this trial by physicians in the same field of practice testifying as ex-

pert witnesses who knew of that standard as it existed at that time.

■ Defendants defend the giving of these two instructions because Nielsen proceeded at trial on a common law negligence theory as well as on a res ipsa loquitur theory. These instructions, defendants maintain, are stock instructions commonly given in medical malpractice cases. While that may well be true, the difficulty in the instant case is that the trial court did not limit the application of those instructions to the common law negligence theory. When those instructions are applied to Nielsen's res ipsa loquitur theory, they create a potential for confusion. For example, instruction 16 stated that "no presumption of negligence arises from the fact of an adverse event occurring during a defendant's treatment." That, of course, is true when a plaintiff is pursuing a common law negligence action. However, when it is applied to a res ipsa loquitur theory, it is misleading at the least. After the three elements of res ipsa loquitur as stated in instruction 22 are satisfied, the doctrine does allow an inference of negligence arising from the fact of an adverse event. *Kusy v. K–Mart Apparel Fashion Corp.*, 681 P.2d 1232, 1235 (Utah 1984). Defendants, however, point to the fact that instruction 16 concludes by stating that adverse results "in and of themselves" do not prove that the doctor was negligent." They argue that this one phrase sufficiently explained to the jury that the res ipsa loquitur elements must be satisfied before any inference of negligence could be drawn. Defendants urge that this language eliminated any ambiguities or contradictions between the instructions. We are not convinced, however, that lay jurors would be able to distinguish between these rather involved negligence theories and instructions simply by noting this one phrase. Nowhere in the instructions was the jury told that instruction 16 did not apply if the res ipsa loquitur elements set out in instruction 22 were found to exist. We respectfully disagree with the decision of *Miller v. Kennedy*, 91 Wash.2d 155, 588 P.2d 734 (1978), relied upon by defendants, which held that an instruction similar to instruction 16 was not misleading in a res ipsa loquitur case. See *Riggins v. Mauriello*, 603 A.2d 827 (Del. Supr.1992).

■ Instruction 19 is even more misleading. In sum, it prohibits the jury from using a professional standard of care derived from the jurors' own experience and requires them to rely only upon expert testimony in determining the standard. This is the exact opposite of what the common knowledge exception permits, which is the basis for the res ipsa loquitur theory. In *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980), we stated that in a res ipsa loquitur case, expert testimony is not necessary to establish the applicable standard of care in a case "where the propriety of the treatment received is within the common knowledge and experience of the layman." *Id.* at 352. In the instant case, instruction 22 informed the jury about the common knowledge exception and stated that expert testimony is not always needed to determine the standard of care. However, instruction 19, which stated that expert testimony is the *only* way to ascertain the standard of care, directly contradicted instruction 22.

While it is true that jury instructions are to be read as a whole, *Startin v. Madsen*, 120 Utah 631, 635, 237 P.2d 834, 838 (1951), when that is done, the instructions do not distinguish between the two separate theories of negligence. Indeed, on their face there is nothing to advise the jury that instructions 16 and 19 apply only to the common law negligence theory and that they do not apply to the res ipsa loquitur theory. Moreover, there is nothing to advise the jury that instruction 22 applies only to the res ipsa loquitur theory. While lawyers and judges with a background in negligence law may be able to discern which instructions apply to which theories, we are not satisfied that a lay jury could do so. We can only conclude that a potential for confusion was created.

■ The confusion created by these instructions may well have denied Nielsen a fair trial. "What the party is entitled to is a presentation of the case to the jury under

instructions that clearly, concisely and accurately state the issues and the law applicable thereto so that the jury will understand its duties." *Hanks v. Christensen,* 11 Utah 2d 8, 12, 354 P.2d 564, 566 (1960); *see Wellman v. Noble,* 12 Utah 2d 350, 352, 366 P.2d 701, 702 (1961). Admittedly, the two separate theories of negligence complicated this case. Thus, special effort to simplify and clarify the instructions was essential. This effort was lacking, and the instructions were consequently confusing and may well have prejudiced Nielsen's res ipsa loquitur case.

Defendants point out that Nielsen's counsel clarified any contradictions in the instructions during his closing argument to the jury and assert that his clarifications remedied any possible misunderstanding. This argument overlooks the fact that jurors are sworn to follow the instructions as given by the court and that they are not bound by explanations from counsel for the parties as to their meaning. More basic, however, is the principle that parties are entitled to clear instructions setting out their theories of the case, and argument by counsel is not an adequate substitute for that entitlement. We view the potential for confusion here to have been substantial, and therefore conclude that the error was prejudicial in that there is a reasonable likelihood that the jury's verdict may have been different absent the error. *Joseph v. W.H. Groves Latter-Day Saints Hospital,* 10 Utah 2d 94, 100, 348 P.2d 935, 938 (1960).

In conclusion, the object of instructions is to enlighten the jury. *Johnson v. Cornwall Warehouse Co.,* 16 Utah 2d 186, 188, 398 P.2d 24, 25 (1965). Instructions 16 and 19 had no application to Nielsen's res ipsa loquitur theory. The trial court should have clarified which instructions applied to res ipsa loquitur and which ones did not. Subheadings, outlining, or even an introductory paragraph should have been employed. Something was needed to tell the jury that Nielsen's common law negligence theory was to be separated from her res ipsa loquitur theory. Without that, instructions 16 and 19 could have misguided the jury.

Counsel for the hospital contends that it should now be dismissed from this suit because any error in the instructions could not have prejudiced Nielsen's case against the hospital. First, counsel points out that Nielsen proceeded against the hospital on a theory of res ipsa loquitur only and that no testimony was presented by Nielsen to prove any act of negligence by the hospital. Therefore, counsel urges that any possible contradictory language in instruction 19 regarding expert witnesses has no application to the hospital. Second, the hospital asserts that since instructions 16 and 19 contain the word "physician," these instructions are solely directed at Dr. Dickson, not at the hospital.

This argument is not persuasive. Nielsen pursued the hospital on the res ipsa loquitur theory. The inference of negligence stemming from the application of res ipsa loquitur arises against the hospital as well as against Dr. Dickson. Instruction 16, which stated in part that "no presumption of negligence arises from the fact of an adverse event occurring during a defendant's treatment," can be read as applying to the hospital as well as to Dr. Dickson. As we have previously pointed out, that statement is confusing and misleading in a res ipsa loquitur case. Any confusion could have prejudiced plaintiff's case against the hospital.

In *Dalley,* this court faced a similar situation. The plaintiff suffered a burn on her leg which allegedly occurred while she was undergoing a caesarean section operation. The hospital, the physicians, and the anesthesiologist were named as defendants in the suit. The plaintiff pursued a res ipsa loquitur theory, but all defendants were awarded summary judgment. In reversing that judgment, this court stated:

> [W]e hold that where the foundation of res ipsa loquitur is established, all defendants who are charged with the safety of a helpless patient may be held liable where the only possible instrumentalities that could cause injury were within the defined area of an operating room under the control of all defendants and where

the injury occurred to a part of the plaintiff's body not involved in the operation itself. Without some further explanation by defendants of how plaintiff was injured, they are all considered in control of the instrumentality, including the hospital and the anesthesiologist.

*Dalley*, 791 P.2d at 200 (citations omitted). The facts of *Dalley* are very similar to the case at hand, and it would be inconsistent for this court to reject this prior rationale and now dismiss the hospital. The hospital proffered no explanation of how Nielsen was injured. Res ipsa loquitur applied to it as well as to Dr. Dickson.

We reverse the judgment of "no cause of action" and remand this case to the district court for a new trial consistent with this opinion.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.