**Robert C. BRADY and Marjorie A. Brady, Plaintiffs and Appellees,**

v.

**Dr. Randal B. GIBB; Utah Power & Light Company, a division of Pacificorp, an Oregon corporation; Annette Grimm; Mountain View Hospital; Dr. Clisto D. Beaty, Xittrium Laboratories, a Delaware corporation, Defendants and Appellant.**

**No. 930520–CA.**

Court of Appeals of Utah.

Nov. 30, 1994.

Certiorari Denied March 13, 1995.

Gary D. Stott, Curtis J. Drake, and Nathan R. Hyde, Salt Lake City, for appellant.

L. Rich Humphreys and M. Douglas Bayly, Salt Lake City, for appellees.

Before BENCH, JACKSON and WILKINS, JJ.

BENCH, Judge:

Dr. Gibb appeals from a jury verdict in a medical malpractice action. We reverse and remand.

FACTS

The basic facts are not in dispute. On December 16, 1988, Robert and Marjorie Brady were involved in an automobile accident with a truck owned and operated by Utah Power and Light Company (UP & L). Mrs. Brady suffered injuries to the left side of her face, including a deep laceration from her eyelid to her lip and a fractured left cheek bone. Mrs. Brady was transported to Mountain View Hospital in Payson, Utah.

Dr. Randal Gibb, the emergency room physician at Mountain View Hospital and a board-certified otolaryngologist, treated Mrs. Brady. Dr. Gibb determined that surgery was necessary. In preparation for surgery, Dr. Clisto Beaty, an anesthesiologist, administered anesthesia to Mrs. Brady and placed

in her eyes an ointment designed to protect the eyes during surgery. Dr. Beaty then taped shut both of Mrs. Brady's eyes. Before operating, Dr. Gibb cleansed Mrs. Brady's left cheek with Exidine, an antimicrobial solution containing chlorhexidine gluconate. It is uncontested that the Exidine somehow entered Mrs. Brady's right eye and burned her cornea. Dr. Gibb admitted that he was the only person who used the Exidine.

Following surgery, Mrs. Brady complained of burning in her right eye, necessitating a corneal transplant and two additional operations. Subsequent tests determined that the injury to Mrs. Brady's eye was caused by Exidine.

Mr. and Mrs. Brady initially filed a complaint against UP & L to recover for personal injuries sustained in the automobile accident. Thereafter, Mrs. Brady amended her complaint alleging malpractice claims against Dr. Gibb, Dr. Beaty, and Mountain View Hospital, and product liability claims against Xittrium Laboratories (manufacturer of Exidine) and Baxter Healthcare Corporation (distributor of Exidine). UP & L settled with Mr. and Mrs. Brady, and Mrs. Brady continued to pursue her malpractice and product liability claims.

At trial, Mrs. Brady introduced evidence that there were substantial warnings in medical literature that Exidine was harmful to eye tissue. Several experts testified that it was well known in the medical community that Exidine was harmful to the eye and that Dr. Gibb breached his standard of care by allowing the solution to get into Mrs. Brady's eye.

At the close of evidence, the trial court dismissed Mrs. Brady's res ipsa loquitur claim.[1] The trial court instructed the jury that it was required to decide the case based solely on expert opinions; however, the trial court also instructed the jury that it could decide the case based on its own common experience—the so-called "common knowledge exception."

The jury returned a verdict, which apportioned fault as follows: ten percent to Mountain View Hospital; thirty percent to Dr. Gibb; forty percent to Xittrium Laboratories; and twenty percent to Baxter Healthcare. The jury awarded Mrs. Brady $330,503.15 in damages. Only Dr. Gibb appeals from the jury's verdict.

## ANALYSIS

The dispositive issue raised by Dr. Gibb is whether the trial court erred by submitting conflicting and potentially prejudicial jury instructions. Dr. Gibb argues that the trial court erred by giving the "common knowledge exception" instruction in view of its instructions that the jury had to decide the case based solely on expert opinion. We agree.

The trial court gave the following jury instructions:

[No. 18] In deciding whether a physician properly fulfilled his or her duties, you are not permitted to use a standard derived from your own experience with physicians nor any other standard of your own. A physician is required to exercise the same degree of learning, care, skill and treatment ordinarily possessed and used by other qualified physicians in good standing practicing in the same medical field. The law does not require that a physician exercise the highest degree of care. It requires the physician to exercise the degree of care that other qualified physicians would ordinarily exercise under the same circumstances.

[No. 19] The only way you may properly learn the applicable standard of care and determine whether or not the defendant physicians conformed to it is through evidence presented during this trial by individuals testifying as expert witnesses who knew of that standard as it existed at that time, and by other evidence admitted for the purpose of defining the standard of care.

[No. 20] Expert testimony is unnecessary to establish the standard of care owed to the plaintiff by defendant Dr. Randal B. Gibb and Mountain View Hospital in a medical malpractice case where the medical procedure is of a kind, or the outcome

1. Although Mrs. Brady now complains about this ruling, she did not file a cross appeal.

so offends commonly held notions of medical propriety, that the standards of care can be established by the common knowledge, experience and understanding of a layman.

Dr. Gibb argues that the trial court confused the jury by instructing it to decide the case based on common knowledge or experience while, at the same time, instructing the jury that it had to decide the case based on expert opinion.

The issue of conflicting instructions causing jury confusion was addressed in *Nielsen v. Pioneer Valley Hospital*, 830 P.2d 270 (Utah 1992). In *Nielsen*, the plaintiff brought a medical malpractice action against a doctor and Pioneer Valley Hospital for damage that occurred to her teeth during knee surgery. The plaintiff pleaded and proceeded to trial on two theories: common law negligence and res ipsa loquitur. The trial court gave the jury the following instructions:

> [No. 19] In determining whether the physician properly fulfilled his duty imposed upon him as a physician, in his treatment and care of plaintiff, you are not permitted to use a standard derived from your own experience with physicians, nor any other standard of your own.
>
> The standard of professional care by which the physician is to be judged by you is that degree of learning, care and skill ordinarily possessed and used by other physicians undertaking the care of a patient under similar circumstances in the same field of practice at the time such treatment and care was rendered.
>
> The only way you may properly learn such standard and thus determine whether or not the physician in this case conformed to it, is through evidence presented during this trial by physicians in the same field of practice testifying as expert witnesses who knew of that standard as it existed at that time.

*Id.* 830 P.2d at 273–74.

> [No. 22] The Court instructs you that in certain situations it is not necessary for the plaintiff in a medical malpractice action to present evidence of the defendants' negligence by expert testimony. Specifically,

> where the propriety of the treatment received is within the common knowledge and experience of the layman, expert testimony is unnecessary to establish the standard of care owed to the plaintiff.

*Id.* 830 P.2d at 272–73. The jury returned a verdict in favor of the defendants.

On appeal, the plaintiff argued that the two instructions created jury confusion and denied her a fair trial. The Utah Supreme Court agreed. In comparing the two instructions, the supreme court stated that "instruction 22 informed the jury about the common knowledge exception and stated that expert testimony is not always needed to determine the standard of care. However, instruction 19, which stated that expert testimony is the *only* way to ascertain the standard of care, directly contradicted instruction 22." *Id.* at 274. The court further stated that there was nothing in the instructions to put the jury on notice that instruction 19 applied only to the common law negligence theory and that instruction 22 applied to the res ipsa loquitur theory. *Id.* The court acknowledged the difficulty involved when separate theories of negligence are concerned, but emphasized that this fact required the court to use special effort to clarify and simplify the instructions. *Id.* at 275. The supreme court chastised the trial court for not carefully explaining which instructions applied to which theory of negligence.

> The trial court should have clarified which instructions applied to res ipsa loquitur and which ones did not. Subheadings, outlining, or even an introductory paragraph should have been employed. Something was needed to tell the jury that Nielsen's common law negligence theory was to be separated from her res ipsa loquitur theory.

*Id.* The court concluded that the potential for confusion was substantial and that there was a "reasonable likelihood that the jury's verdict may have been different absent the error." *Id.*

The instructions given in the present case are nearly identical to the instructions given in *Nielsen*. On the one hand, instructions 18 and 19 informed the jury that it could *only*

decide the case based on expert opinion. On the other hand, instruction 20 informed the jury that it could decide the case based on its own common experience. These contradictory instructions created a high potential for confusion.

The potential for confusion presented in the present case is even greater than that presented in *Nielsen*. The court's ruling in *Nielsen* indicates that, had the trial court clearly and carefully informed the jury on which instruction belonged to which theory of negligence, it would have been permissible to use the inconsistent jury instructions. *Id.* By contrast, in the present case the trial court dismissed Mrs. Brady's res ipsa loquitur claim, leaving only the common law theory of negligence, but nevertheless instructed the jury on the common knowledge exception—an instruction generally used only when res ipsa loquitur is a viable theory. *See Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980) (common knowledge exception is the basis for res ipsa loquitur theory of negligence).[2] By dismissing Mrs. Brady's res ipsa loquitur theory of negligence, and yet still giving the common knowledge exception instruction, the trial court created a situation in which no amount of explanation could have staved off the potential jury confusion. There remained no theory of negligence in the case to which the common knowledge exception could apply. *See Nielsen*, 830 P.2d at 274 (common knowledge exception applies to res ipsa loquitur theory while other instructions apply only to common law negligence theory).

The instructions given in the present case created a high potential for confusion. We conclude that the error was prejudicial in that there is a reasonable likelihood that the jury's verdict may have been different absent the error. *See Joseph v. W.H. Groves Lat-*

ter–Day Saints Hosp., 10 Utah 2d 94, 100, 348 P.2d 935, 938 (1960).

## CONCLUSION

The trial court erred by giving contradictory and potentially confusing jury instructions. We reverse the jury verdict as it pertains to Dr. Gibb and remand for proceedings consistent with this opinion. In light of our disposition, we do not reach Dr. Gibb's additional issues on appeal.

Reversed and remanded.

JACKSON and WILKINS, JJ., concur.

**2.** The common knowledge exception instruction can be used under a common law theory of negligence in certain limited circumstances. *See Fredrickson v. Maw*, 119 Utah 385, 227 P.2d 772 (1951), *overruled on other grounds, Swan v. Lamb*, 584 P.2d 814 (Utah 1978). To allow the exception for common law negligence in this case, we would have to say that it is within a layperson's common knowledge either that no substance should ever be placed in the eye or

that Exidine is hazardous to eye tissue. We recognize, however, that substances are placed in eyes for all sorts of reasons, including surgical procedures. Similarly, we recognize that the hazards of Exidine to eye tissue are beyond the common knowledge of a layperson. Therefore, once the trial court dismissed Mrs. Brady's res ipsa loquitur theory, the common knowledge exception was no longer available.